ALBERT GUTHRIE AND WIFE *vs.* THE TOWN OF NEW HAVEN.

We have no statute conferring authority on towns to accept highways dedicated to the public, and no judicial decision recognizing a necessity for such an acceptance. By the case of *Green* v. *Town of Canaan*, 29 Conn., 157, the whole matter of dedication and acceptance is left to rest on the principles of the common law in which it originated.

Guthrie *v.* Town of New Haven.

These principles authorize the gift, estop the giver from recalling it, and presume an acceptance by the public where the highway is shown to be of common convenience and necessity and therefore beneficial to them.

The principal evidence of its beneficial character will be the actual use of it as a highway without objection by those who have occasion to use it.

A reasonable time is to be allowed for such acceptance. In the case of a city street opened for settlement upon it, a reasonable time would be the time required for the settlement and occupation of the adjoining lands.

A land owner in the city of New Haven in the year 1840, opened several streets upon a tract in the outer part of the city and sold lots bounding upon them, and soon after conveyed the land covered by the streets to *T*, in trust " to convey all said streets to the city of New Haven, to be used as public highways, whenever said city will accept the same; and until then to suffer the owners of the adjoining lands, and all other persons, to use the same as public streets." In 1858 the city voted " to accept said streets for the purposes and uses expressed in said deed." In 1859 *T* conveyed the land covered by the streets to the city for the purposes stated in the trust deed. Neither of the deeds nor the vote contained any provision for the maintenance of the streets. Held :—1. That the deed to *T* was not to be regarded as a deed of dedication, but of the legal title to land in which an easement had been already dedicated to the public. 2. That no inference could be drawn from the conveyance of the legal title to the city and its acceptance by the city, of an obligation imposed or assumed to keep the streets in repair. 3. That in the absence of any special duty imposed upon or assumed by the city, it was the duty of the town to keep the streets in repair. 4. That this being the legal duty of the town, it was to be presumed, in the absence of evidence to the contrary, that the land was conveyed and accepted with the expectation that the town would keep the streets in repair.

A highway already dedicated to the public, which it is the duty of a city to repair, can not be dedicated by the city to the town. The easement being already in the public there is nothing which the city can dedicate. The transfer of its duty to repair can be made only by contract.

ACTION on the case by husband and wife, for an injury to the wife from a defect in a public highway which it was claimed that the defendants were bound to keep in repair. The case was tried to the jury in the superior court, on the general issue, before *McCurdy, J.*

Upon the trial it was agreed that the road described in the declaration, on which the injury complained of occurred, was at the time when the injury occurred a public highway, by dedication to and acceptance by the public, and the only question on this part of the case was, whether it had been so dedicated and accepted as to constitute it a city road, which it was the duty of the city of New Haven to keep in repair, or a town road, which it was the duty of the defendants to keep in

repair. The plaintiffs claimed that the road was at the time, and long before had been, a town highway, which it was the defendants' duty to repair, and for that purpose offered evidence to prove, and claimed to have proved, that ever since the year 1840 it had in fact been a public highway, sixty feet wide, used and traveled over as such by every body who had occasion to use it, without objection or question from any one, and with the knowledge and consent of the former proprietors of the soil, and of those who might have an interest in the same ; that about the year 1850 the defendants caused furrows to be ploughed, to indicate the space designed for a carriage path, leaving about ten feet on each side of the path ; that from the 28th of June, 1860, to the 14th of July following, the defendants by their agents were engaged in working the road as a public highway of the town ; and that all these acts of the defendants were done publicly, with the knowledge of the city of New Haven, and without their interference or that of any other person. The plaintiffs claimed that the road had thus become a public highway of the town, as well as the other streets within the limits of the city, most if not all of which it was agreed were town highways.

The defendants denied that the road was at the time, or ever was, a town highway, and claimed that it was a city street, which it was the duty of the city alone to maintain ; and in proof of this claim offered evidence to prove, and claimed to have proved, that this street, and certain other streets and squares adjoining, had before the year 1840 belonged to Nathaniel and Simeon Jocelyn, that about that time they conveyed the same in trust to one Isaac Thomson for the purposes expressed in their deed, and that Thomson in the year 1858 conveyed the same by deed to the city of New Haven in accordance with the trust, and that the city in 1858, by a legal vote, accepted the same as a street of the city.

The deed of the Messrs. Jocelyn to Thomson, which was dated May 29, 1840, was as follows :—

" To all people to whom these presents shall come : *Greeting.* Know ye, that we, Nathaniel Jocelyn and Simeon S. Jocelyn, both of the town and county of New Haven, in the

state of Connecticut, in consideration of one dollar, and for other valuable considerations, received to our full satisfaction of Isaac Thomson of said town of New Haven, do remise, release and forever quitclaim unto the said Isaac Thomson, and his heirs and assigns forever, all the right, title and interest which we have or ought to have, in or to all those certain parcels of land laid out, opened and made into streets, places and squares, situate in the city of New Haven, and in said town, which are described by the following names, on a certain map filed in the office of the town clerk of said New Haven, [describing them.] In trust however to convey all said streets and squares, and every part thereof, to the city of New Haven, to be used as public highways, streets and squares, whenever said city will accept the same or any part thereof. And until such time as said city shall accept the same in trust to permit and suffer the owners of land adjoining said streets and squares to use and occupy the same as and for public streets, highways and squares, and all other persons whatsover. And in case said trustee or his heirs should wish to resign said trust before said city accepts said streets and squares, then in further trust to convey the same to such person or persons as they shall select and appoint under the same trusts and for the same uses, and with the same powers both of appointing and otherwise, as is hereby expressed above in regard to said Thomson."

The vote of the city, which was passed at a city meeting legally holden for the purpose on the 16th of October, 1858, after reciting in a preamble the substance of the foregoing deed, was as follows :—

" Resolved, That the city of New Haven do now accept of the said streets, places and squares specified in said deed to Isaac Thomson, for the uses and purposes therein expressed."

The deed of Thomson to the city was executed on the 18th day of March, 1859, and was as follows :—

" To all people to whom these presents shall come : Greeting. Whereas Nathaniel Jocelyn and Simeon S. Jocelyn did on the 29th of May, A. D. 1840, by their quitclaim deed of that date, convey to me, Isaac Thomson, all those certain

pieces and parcels of land [describing the streets and squares, and reciting the deed and stating the trusts expressed in it ;] and whereas the said city of New Haven did at a city meeting legally called and held on the 16th day of October, 1858, for that purpose, accept all of the said squares and streets, for the purposes named in said deed :  Now therefore, know ye that I, the said Isaac Thomson, in pursuance of the trust and directions given as aforesaid, and in consideration of one dollar and other valuable considerations, received to my full satisfaction of the mayor, aldermen, common council and freemen of the city of New Haven, a body politic and corporate, located in said town and county of New Haven, do remise, release and forever quit claim unto said grantee, its survivors and assigns, all such right, title and interest as I the said releasor have or ought to have, in or to all and every part of the streets, places and squares hereinbefore mentioned and described, and more particularly described in the said deed of the said Nathaniel Jocelyn and Simeon S. Jocelyn to me, to which reference is hereby made.  To have and to hold the premises, with all their appurtenances, unto the said releasee, its successors and assigns forever, so that neither I the releasor, nor my heirs, nor any other person under me or them, shall hereafter have any claim, right or title in or to the premises or any part thereof, but therefrom I and they are by these presents forever barred and secluded.  In witness whereof I have hereunto set my hand and seal, this 18th day of March, A. D. 1859."

The defendants also offered evidence to prove that they did not work the road as a town highway, and that the work done on it in the summer of 1860 was done with the knowledge and consent of the city street commissioner, who furnished the grade for the work, and for the purpose of draining parts of certain other streets within the city, all except one of which were within the Jocelyn grant ; and they claimed that whatever was done by them in relation to the road was done under the Jocelyn deed, and by consent of the proprietors, and that the road did not become a public highway until it was accepted by the city, when it became and had ever since remained a

city road, which it was the duty of the city to maintain. The plaintiffs denied these claims, and claimed that according to the true object and import of the deeds and votes, in connection with the acts of the parties, the road was dedicated to and accepted by the public, as a town highway, and not as a city road ; and that even if it was at one time a city road, it subsequently by the acts of the town and the city became a town road, which it was the duty of the defendants to maintain.

The plaintiffs offered evidence to prove and claimed to have proved, that an excavation was made by the defendants in the bed of the road for the purpose of lowering it, about three and a half feet deep for a part of the distance ; that the sides were left perpendicular ; that no railing or other protection was erected, and no light placed there ; and that before this the road was nearly level, and safe and convenient for passengers in its whole width ; that no notice was given, and Mrs. Guthrie had no knowledge of the change ; and that through the wrongful conduct of the defendants in so making and leaving the road, the injury was caused ; that Mrs. Guthrie was walking in the evening on the side of the road where she had a right to walk, using proper care, and in attempting to pass from the side to the central part of the road she fell down the embankment and was injured. The defendants denied negligence on their part, and offered evidence to prove, and claimed to have proved, that at the time the public travel on the road was inconsiderable, that the road was short and terminated by the railroad track, and that there was no occasion for any person to pass over it to its termination except for the purpose of going to and along said track ; that there were but five dwelling houses on the road, all of them on the north side, and that on the south side there was an open space owned by the railroad company ; that there was nothing to mark the lines between the land and the road ; that there was no prepared sidewalk or defined foot path on the south side of the road where Mrs. Guthrie fell, and that public convenience did not require such sidewalk or foot path ; that the road was made and left of a proper width, depth and grade, and was at the time safe and convenient for public travel ; that Mrs.

Guthrie was walking on the south side where she had no occasion to walk, and where it was improper for her to go, and that the injury was caused by her own negligence.

It was further claimed by the defendants that it was the right of the city, under its charter and by-laws, to grade, make and maintain such sidewalks within its limits, even on the town roads, as it should deem expedient, and that this had been its usual practice. This right on the part of the city was admitted by the plaintiffs, and testimony was introduced by the defendants conducing to prove such practice, but it was claimed by the plaintiffs that the city had never done any act or exercised any control in relation to the sides of this road.

Upon the various points so made and claimed to be proved, the defendants requested the court to charge the jury as follows:

1st. That even though the ground by the side of the traveled track might be within the limits of a highway which it was the duty of the town to maintain, yet if it was not constructed for travel upon it as a highway or a walk, and the made road was sufficient for the accommodation of the public travel, the town was not required by law to fence or rail it from the road. 2d. That if a sidewalk for the especial convenience of foot passengers was needed on the south side of the road, it was the duty of the city of New Haven to construct it, and if a railing was necessary for the protection of passengers traveling on such sidewalk, it was the duty of the city and not of the town to make it. 3d. That the town was not liable unless the highway in question had been laid out by the town, or had been dedicated and accepted as a town highway, no other mode of making it a town highway being claimed in the case; that the deed from the Jocelyns to Thomson, showed that there was no dedication, and could therefore be no acceptance, prior to the acceptance by the city; and that after the city had by its acceptance in 1858 assumed the obligation of maintaining the road, it could not throw off that obligation except in the mode provided by statute, and if it could do so by dedication, the intention to so dedicate must be unequivocally manifested. 4th. That the city by reason of the deeds

of the Jocelyns and Thomson, and the vote of the city, became liable to maintain the street in question, and that, if so, there was no obligation on the town to maintain the street.

The court did not charge the jury as so requested, but as follows :

1st. The plaintiffs, to sustain this action, must prove that the road in question was, when the injury occurred, a town highway, which it was the duty of the defendants to maintain ; that the injury arose from the negligence of the defendants in the discharge of that duty ; and that there was no such negligence on the part of Mrs. Guthrie as materially contributed to the injury.

2d. That a road may by dedication, and acceptance by the city, become a city highway, which it will be the duty of the city to maintain ; and that when a road so belongs to the city it may, by dedication of the city and acceptance by the town, become a town highway, which it will be the duty of the town thenceforth to maintain. That as to the defendants' claim, that according to the deeds and votes, and the other evidence, the road became a city road, and had ever since remained so ; and as to the plaintiffs' claim, that according to the deeds and votes the road was originally a town highway, and so remained, but, if otherwise, yet subsequently to the year 1858 it became by the acts of the city and town a town highway, which it was the duty of the defendants to maintain—that these were questions of fact for the jury to decide from all the evidence before them.

3d. That it was not necessary for a town to grade and make feasible for travel, or protect in all cases, the whole width of the road, but only so to make and protect it, and to such extent and degree in particular places, as would be proper and reasonable in reference to the location, amount of travel, the expense required, and other circumstances of the case ; and that whether the defendants had so made and left this road as to be safe and convenient, to the extent and degree proper and reasonable, was a question of fact for the jury.

4th. That if the jury should find that at the time of the

injury the road in question was a town highway, which it was the duty of the defendants to maintain, and that the injury arose from the misconduct of the defendants in leav-ing the road in the manner claimed to have been proved by the plaintiffs, and that there was no such negligence on the part of Mrs. Guthrie as materially contributed to the injury, there was nothing in the charter or by-laws or practice of the city which need prevent them from rendering a verdict for the plaintiffs.

The jury returned a verdict for the plaintiffs, and the defendants moved for a new trial.

*R. I. Ingersoll* and *C. R. Ingersoll*, in support of the motion.

1. By the deeds, and the vote of the city, the city became the owner in fee of the streets and squares. They were estab-lished as streets and squares of the city. Prior to the accept-ance by the city their use by the owners of land adjoining, and all other persons whatsoever, was by permission and sufferance, till the city should act. The deed from the Jocelyns was a conditional one in trust; and had the city refused to comply with its terms, the grantors might have entered for condition broken, and the premises would have reverted. Thomson had no power under this deed to make a dedication. The deed had no other object than publicly to manifest the intention of the proprietors not to have a public highway established over the land until it should come under the control of the city of New Haven. Angell on Highways, § 151, *et seq.*; *Wood* v. *Veal*, 5 Barn. & Ald., 454; *Bara-clough* v. *Johnson*, 8 Adol. & El., 99. The court, therefore, in leaving the question of dedication to the jury, should have instructed them, as matter of law, conformably to the defend-ants' request, that a dedication and acceptance could not be had during the period of Thomson's estate.

2. The court erred in not charging the jury that the city by the deeds and its vote became liable to maintain the street in question, and if so that there was no obligation on the town to maintain it. The powers and duties of the city in

reference to new streets, squares and public walks, are similar to, though more plenary than, those of towns as to highways. The 34th section of the city charter (Private Acts, 1857, p. 108) provides for the mode of proceeding in laying out streets, squares and walks in the city. See also *Townsend* v. *Hoyle,* 20 Conn., 1. Where there are no damages to be paid to land proprietors, the city itself being the owner of the land, the ordinary formalities can not be necessary. The right of the city, under its charter, to open streets, squares or public walks, and to resort to compulsory means, if necessary, for the purpose, carries with it by implication the right to accomplish the same object upon its own land, whether obtained by gift or purchase.

3. The court erred in instructing the jury, that, if the street in question was at any time one of the public streets of the city, which it was the duty of the city to maintain, yet the city could afterwards throw off that charge by a dedication of it to, and acceptance by, the town. In this there was manifest error. It is adverse to the decision in *Reed* v. *Town of Cornwall,* 27 Conn., 48.

4. The plaintiffs claimed that Mrs. Guthrie was walking on the side of the road, and that in attempting to pass from the side to the central part of the road she fell and was injured, there having been no railing to prevent persons going from the side to the center. The defendants requested the court to charge, that if a side-walk was needed there it was the duty of the city to construct it, and if a railing that it was the duty of the city, and not of the town, to make it. This was omitted by the court, and it was left to the jury to decide whether the road was reasonably safe in its whole width. The 39th section of the city charter, (Private Acts, 1857, p. 111,) expressly confers upon the city the power to make and control all necessary sidewalks. The case shows that the defendants claimed to have proved, that what was done to the street, and complained of by the plaintiffs, was with the knowledge and consent of the city street commissioner, who furnished the grade for the work. It was, therefore, of the utmost importance in this aspect of the case, that the court

should have charged on this subject; but it was entirely omitted. The whole power of making, raising or leveling side-walks and side gutters, is, by the 39th section of the charter, conferred upon the city, and it would be preposterous to hold it to be the duty of the town to make what the city can unmake; to level what the city can raise; to raise what the city can level; to erect a railing which the city could remove; or to make the town responsible for what was done under the authority of the city street commissioner, who furnished the grade for the work. So careful has the legislature been to avoid collisions between the authorities of cities and towns that the statutes particularly provide that " the several towns in this state may make by-laws to regulate and preserve any side-walks now made, or that hereafter may be made by such towns, or by individuals therein, for the special convenience of foot passengers; *provided the same be not within the limits of any city, borough, or incorporated village.*" Rev. Stat., Tit. 3, § 32. The 24th section of the charter of the city is not less explicit in empowering the corporation " to make such by-laws as they may see fit to make, in relation to the public squares, streets, highways and walks in said city." There is an obvious distinction between the highways of towns and those of cities recognized in our public statutes. See Rev. Stat., Tit. 24, § 29. It will be seen by this act that the cities have not only the power, but it is their duty, to provide streets for the "special convenience" of the city, though " not for common convenience and necessity," and if their authorities fail in this duty the superior court may enforce it.

5. The court also erred in not charging as requested by the defendants in their first point. Towns are not required to rail those parts of a highway not needed for the public travel. Rev. Stat., Tit. 24, Sec. 7. And this is not a question for the jury to decide. *Rice* v. *Montpelier*, 19 Verm., 470.

*Blackman* and *Watrous*, contra. ·

1. The charge in the court below was in all respects correct. 1st. It was agreed in the court below that the road

in question was a highway by dedication to and acceptance by the public. It is therefore of no consequence whether the question of an *animus dedicandi* was properly or improperly left to the jury. A new trial will not be granted for an immaterial error. *Dulles* v. *DeForest,* 19 Conn., 190 ; *Selleck* v. *Sugar Hollow Turnpike Co.,* 13 id., 453. But there was no error in putting the question of an *intention* to dedicate, which is the essence of dedication, to the jury. *Noyes* v. *Ward,* 19 Conn., 250, 265, 269 ; *Green* v. *Town of New Canaan,* 29 id., 157 ; *Abbott* v. *Mills,* 3 Verm., 521 ; *State* v. *Catlin,* id., 530 ; *State* v. *Trask,* 6 id., 355 ; *Jarvis* v. *Dean,* 3 Bing., 447 ; *Regina* v. *Petrie,* 30 Eng. Law & Eq., 207. The instruction was clearly correct, that if the city had become bound to maintain the street in question, this obligation might be transferred to the town by the dedication of the city and acceptance of the town, and whether this had been done or not in this case was a question for the jury. 2d. The charge in regard to the effect of the charter, by-law and practice of the city, was most obviously correct. Charter, Secs. 24, 34, 39, 42, 45. These sections, which are all touching this case, show that there is no duty on the city until it *chooses to assume* jurisdiction, and that the street commissioner has no power or authority over highways within the city except as ordered by the city council.

2. As to the claims of the defendants, the first of them is substantially approved by the charge. The defendants have no ground of complaint in this part of the case. Angell on Highways, § 260, *et seq.* ; *Willey* v. *Portsmouth,* 35 N. Hamp., 313 ; *Snow* v. *Adams,* 1 Cush., 443 ; *Palmer* v. *Andover,* 2 id., 600 ; *Jones* v. *Waltham,* 4 id., 299 ; *Raymond* v. *Lowell,* 6 id., 524 ; *Hayden* v. *Attleborough,* 7 Gray, 338 ; *Gregory* v. *Adams,* 14 id., 242.

3. The second of the defendants' claims is manifestly erroneous. 1st. The injury arose not from want of or defect in a sidewalk, but from an improper excavation through the central part of the highway. 2d. It is not pretended that the city has by any act of its own, unless by the vote of 1858, *assumed* jurisdiction over any portion of the highway in ques-

tion; and if therefore there is any such duty upon the city as the defendants here claim, it must be because the acceptance, which it was agreed had taken place, bound the city, and not the town, to take the care of the whole highway, including of course the sidewalk. 3d. This question of acceptance, and who accepted, is one for the jury, and was properly put to the jury by the court, and the case shows that the jury decided right. *Green* v. *Town of Canaan*, 29 Conn., 157; *State* v. *Trask*, 6 Verm., 355; *Hayden* v. *Attleborough*, 7 Gray, 338. 4th. The vote of 1858 created no duty in reference to any part of the highway. That, and the deed from Thomson, merely passed the fee simple of the land over which the highway is located, to the city. The fee in the land never *necessarily*, and rarely in fact, belongs to the party or parties holding the easement. *State* v. *Trask*, 6 Verm., 355; *Read* v. *Leeds*, 19 Conn., 182; *Cincinnati* v. *White*, 6 Peters, 431; Angell on Highways, § 301.

4. The third claim of the defendants is wrong. 1st. The deed from the Jocelyns shows that a dedication was made when the deed itself was made. Angell on Highways, §§ 142, 143; *State* v. *Trask*, 6 Verm., 355; *Cincinnati* v. *White*, 6 Peters, 438. 2d. If the deed does not show this, the use by the public, in connection with the acts of the town, most clearly does. *Hayden* v. *Attleborough*, 7 Gray, 338; *Regina* v. *Petrie*, 30 Eng. Law & Eq., 207. 3d. The city did not, as shown above, assume, by the vote of acceptance, the maintenance of the road in question, and therefore had no occasion to throw off the obligation so to do; but if such assumption had been made, the jury has found that the obligation has been assumed by the town since that vote was passed, and that now, at least, the town is bound to maintain the road.

5. The fourth claim of the defendant is involved in the third, and is answered by the answer to that.

BUTLER, J. The donation or dedication of land by the owner for the purpose of a highway, may ordinarily be determined by his declarations and conduct with reasonable certainty; but the question, what shall be sufficient proof of the

acceptance by the *unorganized* public, who can not as a whole or by a majority expressly accept, is not without difficulty. In some of the states the power to accept has been conferred by special statute upon the local corporations who are charged with the burden of constructing and maintaining the necessary highways within their limits. In other states a like result has been reached and such acceptance required, in the absence of statutory provision, by judicial decision. But in this state we have no statutes conferring such authority, nor any judicial decisions recognizing a necessity for it. Under the apprehension that individuals, by dedicating land for highways where public convenience and necessity did not require them, might impose unnecessary burdens upon towns and cities, some disposition has existed in this court to require an acceptance by towns; but the whole matter, acceptance as well as dedication, has been left by a majority of the court to rest on the principles of the common law with which it originated. These principles authorize the gift, estop the giver from recalling it, and presume an acceptance by the public where it is shown to be of common convenience and necessity, and therefore *beneficial* to them. For the purpose of showing that it is beneficial, an express acceptance by the town, or other corporation within whose limits it is situate, and who are liable for its repair, the reparation of it by the officers of such corporation, or a tacit acquiescence in the open public use of it, are important; and so are the acts of individuals, such as giving it a name by which it becomes generally known, recognizing it upon maps and in directions, using it as a descriptive boundary in deeds of the adjoining land, or as a reference for locality in advertisements of property, &c., and any other acts which recognize its usefulness and tend to show an approval of the gifts by the members of the community immediately cognizant of it; but the principal evidence of its beneficial character will be the actual use of it as a highway, without objection, by those who have occasion to use it for that purpose. *Green* v. *Town of Canaan*, 29 Conn., 157.

On the face of this motion, therefore, the dedication and acceptance of the highway in question appear, and the defect

and injury are found by the verdict. The city was not by statute liable to repair and the town was. *Prima facie*, therefore, the town was liable for the injury, and the verdict right.

But the defendants made several claims on the trial in avoidance of that liability. They claimed that a special obligation to maintain the highway was imposed upon the city by the deed which made the dedication, and that such obligation was assumed by their acceptance of a conveyance from Thomson the trustee; and that by force of the exceptions in the general statute, such assumption of an obligation exempted the town from the duty to repair, and all consequent liability for injuries resulting from defects. But we think it very clear that the defendants have misapprehended the true character and purpose of the deed from the Jocelyns to Thomson.

In the first place, it appears from the recitals in the instruments that in 1835 the Messrs. Jocelyn were the owners of a tract of land within the limits of the city and town, and that they divided it into streets, squares and sections, for the purpose of selling the sections for building lots; made a map of the same, designating the streets by name, and among them the street in question as Walnut street; indorsed upon the map their intention to sell at public auction at a certain time and place; and filed the map in the office of the town clerk in the town of New Haven; and for aught that appears, proceeded to sell the lots at the designated time and place and bound them upon the designated highways. It further appears that between that time and the execution of the deed, the tracts intended for streets " were laid out, *opened* and *made* into streets," &c., and some of the lots were sold, for the deed speaks of " owners of land adjoining said streets," &c., other than the grantors. Now reading this deed in the light of surrounding and recited facts, we find it to contain convincing evidence of a prior dedication of the highway. The proposed sales of the owners imperatively required that the streets should become highways *immediately*, so that the purchasers could have access to their lots. The mapping of the intended lots and streets, and naming the latter as such, was clear evi-

dence of the "*animus dedicandi;*" and filing the map in the office of the town clerk, a clear publication of that intention; and both, in connection with the laying out, *opening* and *making* of the streets and selling the lots, furnish conclusive evidence of a dedication to take effect immediatcly. It does not appear whether there had been an acceptance by the public prior to the execution of the deed or not, nor is that material. That acceptance must have been by the public, not by the city of New Haven; and the public must have a reasonable time for acceptance, and in case of a dedication of a street for the use and accommodation, mainly, of those who were expected to purchase the adjoining lots and build on them, an immediate practical acceptance, evidenced by a considerable public use, was not to be expected. In a case like this, a reasonable time was the time required for the settlement and occupation of the adjoining lands; and that must have been in the contemplation of the parties. Read in the light of surrounding circumstances and recited facts, therefore, this deed is not a deed of dedication in itself, or of land to enable others to dedicate; but a deed of the fee in certain lands which had already been dedicated, and which the intermediate trustee was to "suffer" the owners of the adjoining lands, who had purchased them on the faith of a dedication, and the public generally, to enjoy forever in conformity to that dedication, and which the city were to hold for the same purpose.

And in the second place, if this could be construed as primarily a deed for the purpose of dedication, we are pointed to nothing, and we discover nothing in it, whether read according to its terms or in connection with the surrounding facts and the vote of acceptance, which indicates a purpose to impose upon the city the duty of *maintaining* the streets in repair, or which could have any such effect in the law. The title was given to Thomson as an intermediate trustee, and in trust to suffer the public to enjoy, and to convey to the city. The city were to take subject to the same trust, and a perpetual easement in the public, then existing, and recited and declared to be such in the deed, and there is no conveyance to the city of the entire title, with authority to them to dedicate, nor for

any discretionary purpose, nor upon any condition that they should repair, *express* or *implied*.

There were obvious and sufficient reasons for vesting the legal title in the city, to be found in the legal principle that in case of dedication the fee remains in the owner or his heirs or a trustee; in the fact that the town had no control by law or custom over the sidewalks or the public squares; and in the fact that it was important that the city should have entire control of the public squares, that they might improve, adorn and protect them. In these facts we find a sufficient and probable motive for giving the deed and placing the fee in the city, subject to the trust as to the squares and the dedication of the streets, and see nothing to indicate that its purpose was one of authority to dedicate or accept the easement, nor to impose upon the city the duty of maintaining the streets in repair.

If there is nothing in the deed indicative of an intention that the city should repair the highways, there is certainly nothing in the other facts stated which indicates such an intention. The motion shows that the statutory liability of the town to repair the highways in the town, irrespective of the city, was recognized by both. It states that most if not all the highways or streets in the city were repaired by the town. It does not appear, therefore, that the city has ever repaired any of the streets within its limits, however laid out, whether under their charter or by the selectmen, or recognized its liability to do so in any case. The legal liability therefore rested upon the town, and the parties must be presumed, in the absence of evidence to the contrary, to have given and received the deeds in the expectation that the town would repair.

Nor is there any thing in the vote of the city which countenances the claim of the defendants. That vote recites the fact that the streets had been laid out, opened and made, and accepts the streets, places and squares *as such* for the uses and purposes therein expressed, that is, expressed in the deed to Thomson. Here is nothing like the acceptance of a condition or the assumption of an easement or obligation to repair. As

to the streets, it was a mere acceptance of a legal title to land, which was already, and was to continue to be, a highway, and subject to an easement *in the public.*

We are satisfied therefore that the first, second and fifth points made by the defendants are not sustained, and that there is no error in that part of the charge or omission to charge to which they refer.

The entire investigation and discussion in relation to side-walks was irrelevant and immaterial. On the conceded facts Walnut street at the time of the injury was a highway. Though a short street there were five dwellings upon it. It must be assumed to have been in use by people on foot, by night and by day. It was level and safe. The town entered upon it and commenced an excavation for a road bed, as the plaintiffs claimed, or as the defendants claimed, a drain; if for a road bed, within lines of demarkation between the road bed and spaces on each side reserved for sidewalks, and fixed by the street commissioner. The city were not bound and did not attempt to work the sidewalks at the same time ; and the town in making the excavation, if for a road bed, were bound to the same precautions as they would be in digging a drain, or excavating for a bridge or culvert, or for any other purpose in the highway. If they made an excavation they were bound to protect it, until the adjoining ground reserved for sidewalks was worked by the city and the excavation was safe. Because they did not protect their excavation, Mrs. Guthrie, without negligence on her part, fell into it and was injured. This involved no question about sidewalks which could affect the merits of the case, and the court properly declined to instruct the jury as requested.

The third exception of the defendants is well taken. That part of the charge in which the court instructed the jury that a highway in fact, which it was the duty of the city to repair, could be *dedicated* to the town was erroneous. *Land* may be dedicated to the public for, and subjected to, an easement ; but an *easement* can not be dedicated by the corporation who are merely liable to keep it in repair, to another corporation. The fee of the land was in the city. Assuming they were liable to repair, the easement was in the public not in them,

and there was nothing they could dedicate. As owners of the fee, they could not dedicate it for a new easement, for the existing one in the public was *exclusive.* They could not dedicate the easement, for that was not theirs, it was in the public. They could not dedicate the *obligation to repair*, for the law knows of no such operation. That obligation they could transfer, if at all, by contract only.

But that error does not entitle the defendants to a new trial. Upon the conceded facts the town was liable, and no injustice has been done. Walnut street was a highway, and there was no evidence offered which would justify the jury in finding the city liable to repair it. The agents of the town entered upon the highway for the purpose of excavating, and did excavate, either a roadway or a drain. In either event they were bound to protect the public from injury. They did not do it, the injury happened in consequence, and the verdict should stand.

A new trial is not advised.

. In this opinion the other judges concurred; except DUTTON, J., who being interested as a tax-payer of the town of New Haven, did not sit.