## VANCE v. LYONS ET AL.

*Highways—Common-law dedication accepted by user—Width not confined to way used—Evidence—Purported records of Ohio Company inadmissible, when—Prima facie proof of company's proceedings made, how.*

1. A common-law dedication of a street may be accepted by user, and when the acceptance is accomplished it is not confined to the way actually used, but runs to the whole width dedicated.

2. A book purporting to be a record of the Ohio Company, without any proof of its genuineness, is not admissible in evidence.

3. *Prima facie* proof of the proceedings of the Ohio Company may be made by copies thereof filed in the office of the recorders of Washington, Athens, Gallia, Morgan and Lawrence counties, under the act of 16 Ohio Laws, 134.

(Decided April 8, 1924.)

ERROR: Court of Appeals for Gallia county.

*Mr. A. J. Greene*, for plaintiff in error.
*Mr. A. M. Barlow*, for defendants in error.

MAUCK, J.  This proceeding is to review a judgment of the Common Pleas denying the plaintiff any recovery for damages growing out of an alleged trespass.  The issues arose upon the amended petition claiming such damages to plaintiff's lands, which were particularly described as certain lots in Fair Haven, Gallia county, Ohio, "and also a strip 45 feet wide, lying along the upper or north side of said lots."

[1] Dedication, 18 C. J. §§ 73, 90; [2] Evidence, 22 C. J. § 1096; [3] Id., 22 C. J. § 1097.

The defendants for answer denied generally, but in open court agreed that "the allegations of the petition as to possession are true as stated in the petition as to adverse possession for more than 30 years."

The only question at issue in the case was whether the plaintiff was the owner of the strip above mentioned. While her ownership was denied, the foregoing stipulation in connection with the averment in the amended petition that the plaintiff had been in the continuous, open, notorious and adverse possession of the strip under claim of title and right for more than thirty years was dangerously near to an admission that the plaintiff was entitled to a judgment.

The trial court, without a jury, rendered judgment for the defendants, and in so adjudging had to find that the plaintiff was not the owner of the strip in question. There was some meagre testimony, in addition to the stipulation mentioned, that the plaintiff had title to the strip by prescription, and she exhibited a quitclaim deed to the strip, which deed was made by one who had acquired part of the lots mentioned at sheriff's sale, the sheriff's deed purporting to convey the strip to plaintiff's grantor by this description, "and also the strip on the north side of the above described lots."

It does not appear by the pleading, but it casually appears in the testimony, that the defendants are the trustees of Gallipolis Township and that the alleged trespass consisted in removing the plaintiff's fence from what the defendants claimed to be the highway, and in destroying

some trees, etc., which were also claimed to be in the highway. The defendants were sued personally for damages. The real question which they probably desired to raise was that the strip mentioned in the amended petition was a part of the highway and that the plaintiff had unlawfully encroached thereon with the fence, trees, etc., and that they were performing an official duty in removing the same. The question sought to be tried out, therefore, seems to have been whether the strip in question was a part of the public highway, and this required a determination of the width of the highway, as no controversy arose as to the location of the north line of the roadway.

As a matter of law and history the court knows that the lands in question were a part of the Ohio Company's Purchase, and that Fair Haven was one of the towns laid out by that company. That company so divided the domain granted it by the United States that each member of the company was allotted, among other tracts, one town lot. (Peter's Ohio Lands, 251.) The lands in question were platted to carry out the plan of the Ohio Company for partition in severalty. This was in 1796, and, of course, prior to statehood and prior to settlement of the proposed town. The territorial legislature in 1800 passed an act requiring future town plats to be acknowledged and recorded, and these statutes have continued in substantially the same form until now and must be strictly complied with in order to constitute a statutory dedication of lands to public use. That same act, however, provided that town plats theretofore made should within one year thereafter

be recorded in the office of the recorder of the proper county. If the Ohio Company, in compliance with that act, caused its town plat of Fair Haven to be recorded in Washington county, of which Gallia county was then a part, a statutory dedication was accomplished, otherwise it was not. The record before us shows nothing bearing on the matter of record, so no statutory dedication was shown.

'A dedication may, however, be at common law. This is not to be confused with a highway arising by prescriptive use. It arises when the owner intends that his property shall be devoted to public use, opens it to the public, and the public accepts the same.

"If the owner of land lays it off into blocks and streets and plats the same and sells the lots with reference to such plat, he thereby dedicates the streets indicated thereon to the public." 13 Ruling Case Law, 24.

Knowing that Fair Haven was one of the towns planned by the Ohio Company a court needs no proof that the owners in 1796 contemplated streets adjacent to the several lots platted by such owners. There next arises the question whether the public accepted the same. In modern times acceptance of a common-law dedication is most satisfactorily shown by acts of the public authorities in improving and repairing the highway. No such evidence of acceptance was possible in early days and the common law did not require it. No attempt has been made by legislation to fix any mode of procedure for making an acceptance where the property dedicated is not within a municipal corpora-

tion. The clearest enunciation of the common law principles that has come under our observation is that reproduced in the note to 27 American Decisions, 565, from *Guthrie* v. *New Haven*, 31 Conn., 308, as follows:

"These principles authorize the gift, estop the giver from recalling it, and presume an acceptance by the public where it is shown to be of common convenience and necessity, and therefore beneficial to them. For the purpose of showing that it is beneficial, an express acceptance by the town or other corporation within whose limits it is situate and who are liable for its repair, the reparation of it by the officers of such corporation, or a tacit acquiescence in the open public use of it is important; and so are the acts of individuals, such as giving it a name by which it becomes generally known, recognizing it upon maps and in directions, using it as a descriptive boundary in deeds of the adjoining land, or as a reference for locality in advertisements of property, etc., and any other acts which recognize its usefulness and tend to show an approval of the gifts by the members of the community immediately cognizant of it; but the principal evidence of its beneficial character will be the actual use of it as a highway, without objection, by those who have occasion to use it for that purpose."

There is no dispute that the highway in question was used, but it is claimed that the use was confined to a width of about fifteen feet. The extent of the user, however, does not define the extent of the acceptance. It is analogous to a contract. To illustrate: The owner offers to the

public a highway, say of sixty feet. He contemplates thereby not the immediate, but the future needs of the public. In due time the public uses twenty feet of the way. It uses no more because it needs no more. This user is not to be interpreted with reference to the amount of land actually used. The user is an acceptance, and the acceptance relates to the offer and is an acceptance of the offer actually made, and the result is a completion of the dedication of the entire amount offered.

There are exceptions to the rule, but the weight of authority is thus expressed in 18 Corpus Juris, at page 88:

"Although there are some decisions apparently to the contrary, where the dedication is well defined, as in the case of a platted street or alley, and the municipality opens and maintains it as such for a part of the width shown by the plat, it will, according to the weight of authority, be held to have accepted the street or alley for the entire width, especially where the public use is practically of the whole of the land dedicated."

This is the reasonable rule. Why should the public be required to evidence its acceptance by a use of more than would at a given time serve the public needs? As observed by the Supreme Court in *Lane* v. *Kennedy*, 13 Ohio St., 42, 47:

"The capacities of its streets and public highways, whether prescribed by statute or established by the proprietors of towns or embryo cities, were fixed with regard to the *future* rather than the *present* exigencies of the communities in which they were located. At first, a mere trace would

have sufficed for all the travel where, in process of time, an avenue is scarcely adequate to accommodate all who, for business or pleasure, may desire to traverse it.''

It follows, therefore, that the way in question is a dedicated highway, and as no legal record was shown it must for the purposes of this case be assumed to have become a highway by common-law dedication. It further follows that the dedication was accepted by the public and that such acceptance runs to the full width of the highway as it was dedicated.

The remaining question is, how wide was the strip dedicated? The defendants undertook to prove that it was dedicated to a width of one chain, or sixty-six feet. The record in this respect reads as follows:

''The defendants introduced what purports to be a plat of Fair Haven on the right hand page about three-fifths through the book, known as the Ohio Company's Record, a copy of which is hereto attached marked Exhibit 1 of the defendants. The plaintiff objected to the introduction of the plat, which objection the court overruled, to which ruling of the court in overruling said objection the plaintiff excepted.''

The objection should have been sustained for the simple reason that the book did not prove itself, and we know of no case in which a fact can be proven by a book because the book ''purports'' to be of a certain character. If it were really the original record of the Ohio Company it would, if so proven, be competent, because both parties to the controversy derive their rights from the Ohio

Company and are bound by that company's acts.
The Legislature early recognized that while the
Ohio Company was a private organization its ac-
tions were of wide concern and affected the title
of thousands of acres of property. Accordingly,
in 1818, there was passed an act (16 O. L., 134;
Peter's Ohio Lands, 257) authorizing and requir-
ing the superintendent of that company to furnish
for Washington, Athens, Gallia, Morgan and Law-
rence counties copies of all their resolutions, etc.,
including plats, to be certified and verified by the
superintendent or his assistant and filed with the
several county recorders. These records, when so
filed, were by that act given the force and effect of
public records, subject to the right of the oppos-
ing party to show the transcript to be incorrect.
Later, in 1857 (54 O. L., 119), what is now Sec-
tion 13878, General Code, was enacted, authorizing
the deposit of the records of the Ohio Company
with the recorder of Washington county, and that
act (Section 13879, General Code), makes an au-
thenticated copy of such records competent testi-
mony. The presumption is that this act was com-
plied with, that the originals are now in Washing-
ton county, and that the original was not offered in
evidence in this case. If the defendants had shown
that the record offered by them was a transcript,
made under the act of 1818, it would have been
competent, and would have been controlling unless
competent evidence had been adduced to show the
transcript incorrect. Or the dedication could have
been proved by an authenticated copy, under Sec-
tion 13879, General Code. If both sources failed,
proof could be obtained from anyone having cus-

tody of the old records, under the rules governing the admission in evidence of ancient documents.

If the contents of defendants' Exhibit 1 had been properly proved they would have shown that the street was originally dedicated one chain in width, and plaintiff could not have recovered. The encroachments made by her, and perhaps by her predecessors in title, could never have ripened into a right. It was definitely determined in *Lane v. Kennedy, supra,* that such encroachments do not constitute adverse possession as against the public. That is, the presence of a fence, fruit trees, etc., does not infringe upon the rights of the public until the public desires to use the space occupied by them. In the case at bar, however, the record specifically shows an agreement of the parties that the plaintiff had adversely held the property in question for thirty years. Such agreement is inconsistent with the claim that the strip is now a part of the highway. It is equivalent to an admission either that the strip was never within the dedicated way, or that some time prior to thirty years ago it was legally vacated, which, in either case, would entitle the plaintiff to recover.

For the reasons indicated the judgment is reversed, and the case remanded for new trial.

*Judgment reversed.*

MIDDLETON, P. J., and SAYRE, J., concur.