ETHAN C. ELY *vs.* FRANCIS W. PARSONS.

Hartford Dist., Oct. T., 1886.    PARK, C. J., CARPENTER, PARDEE,
LOOMIS and GRANGER, Js.

In this state a highway can exist by prescription, and in the case of unen-
closed and uncultivated land dedication by the owners can be found
upon mere user of the road by the public.

The fact that land over which a way by dedication is claimed is unenclosed
woodland, ought greatly to weaken and often to overcome the pre-
sumption of an intention to dedicate to be derived from the use.   But
that fact is only evidence to rebut the presumption, and is not con-
clusive.

When a highway is obstructed by the growth of trees and shrubbery by
the side of it, the selectmen of the town have a right to remove the
obstructions before giving notice to the owner of the land.

A nuisance which actually obstructs public travel may be abated by any
one who is injuriously affected by it.

Where a public officer employs a subordinate officer to do a certain duty
which devolves upon the former as a public officer, he is not as a gen-
eral rule liable for a wrong done by the subordinate, unless he directed
or authorized the wrong.

But if the agent is not himself an officer known to the law, but his ap-
pointment is private and discretionary with the officer, the latter is
responsible for his acts.

A selectman, for the purpose of clearing a highway obstructed by the
growth of trees and shrubbery, directed a laborer employed by him
"to cut the brush and trees and make the road passable."   No trees
were pointed out and no limits given, nor any expression of judgment
by the selectman, but the matter was left to the judgment and discre-
tion of the laborer.   The laborer, acting on his own judgment and not
maliciously nor wantonly, cut down some trees on the land of an ad-
joining owner, the removal of which was not necessary.   Held that
the selectman was liable for the damage done.

Where a suit is instituted to try some question of permanent right, and
the plaintiff is found entitled to that right, but it is a case where only
nominal damages can be given, the fact that the damages are merely
nominal does not constitute an objection to granting a new trial; but
if the plaintiff has failed in the substantial object of the suit and has
left only a bare technical right to recover nominal damages, a new trial
will not be granted him for that purpose.

[Argued October 8th—decided November 30th, 1886.]

ACTION for trespass to land and cutting trees and shrubs
growing thereon; brought originally before a justice of the

peace, and, by the plaintiff's appeal, to the Court of Common Pleas of Hartford County, and there tried to the court before *Calhoun, J.*

The defense set up was—1. A general denial; 2. That the land upon which the entry was made was a public highway, which it was the duty of the selectmen of the town of Enfield to keep in repair, and commodious and safe for public travel; that the highway was defective by reason of certain small trees and shrubs which grew in or overhung the traveled path, so as to annoy and endanger public travel upon the highway; and that the defendant as a selectman, and in the line of his duty, directed the cutting and trimming of all such small trees and shrubs within the limits of the highway as might be necessary to render it reasonably safe and convenient for public travel, but did not authorize or direct or himself commit any other acts whatever upon the land.

The court found the following facts :—

The land in question is in the northern part of the town of Enfield. There is there a quadrangular tract containing about five sixths of a square mile. It is bounded on the north, west and south by highways, and on the east by Shaker Pond. The highway on the north is known as the Brinton Allen road, and is in the state of Massachusetts; that on the west as the King road, and that on the south as the Brainard road. Excepting four houses on the Brainard road no houses stand on the tract; and excepting the lands connected with these houses the tract has never been divided or enclosed by fences. Excepting these lands and a few acres in the southwest part, now owned by the plaintiff, which were cultivated more than twenty-five years ago, the tract was formerly entirely woodland; and now is wholly woodland, or land from which the wood has been cut, excepting the lands connected with the four houses.

West of the King road and adjoining the tract is another tract of uninclosed and uncultivated woodland of about the same area, and north of the Brinton Allen road and these two tracts is another tract of about three thousand acres of

uncultivated and uninclosed woodland lying in the state of Massachusetts.

The plaintiff owns a hundred acres of the first described tract, lying on the west side thereof and extending from the Brinton Allen road on the north to the Brainard road on the south and bounded on the west by the King road. The plaintiff's land is uninclosed and is covered with growing wood, mostly pines and birches.

Across the whole of the first described tract is the road in dispute, two hundred and seventy-four rods in length, subtending the angle made by the junction of the Brinton Allen and King roads. One terminus is on the King road near the southwestern corner of the tract and two thousand three hundred feet south from the junction, and the other terminus is on the Brinton Allen road three thousand five hundred feet east of the junction. For a hundred and fifteen rods from its southwestern terminus it passes through the plaintiff's land. It is the shortest and most level road between the villages of Thompsonville in Enfield and East Longmeadow in Massachusetts, and saves about one fourth of a mile to those passing between those villages, or in the same course from points beyond or adjacent. It passes over sandy land, and its track is not liable to be out of repair.

For more than sixty years public travel has passed in the same general direction as this road runs, seeking to save in distance and to find a more level track for heavy loads. About forty years ago the termini of the road were at different points from the present;—the southern one on the Brainard road and the northern one on the Brinton Allen road west of the present terminus. But for thirty years past all travel has been in the present line.

About twenty-five years ago the owner of the land dug a ditch across the road at its northern terminus to obstruct travel, but travelers passed around the end of the ditch, which was soon filled up. This ditch was east of the land now owned by the plaintiff. About thirty years since a former owner of the land at the southwest corner of the first described tract of land, plowed up a portion of it,

including a part of the road, and sowed buckwheat, but the public passed over the plowed land, and travel was not interrupted. The plaintiff now owns the land where this plowing was done. These are the only attempts by the owners of the land through which the road runs to interfere with public travel, and for twenty-five years last past it has been used by the public continuously for all purposes of. travel, with the knowledge of and without objection by the land owners, and especially with the knowledge and acquiescence of the owners of the plaintiff's land.

The road passing through woodland for a considerable part of its course is liable to become obstructed by bushes, branches of trees, and young trees bent down by ice and snow, thus interfering with travel. By direction of the selectmen of Enfield, acting for the town, such obstructions had been cut out, and through the land of the plaintiff, twice before 1883—once in 1867 and once in 1880.

The plaintiff holds his land under three deeds: the first given March 14, 1872, and the last July 29, 1874, by Josiah H. Hall, who told the plaintiff at the time of giving the deed that the road was a public highway, but no reference to it was made in the deed, nor in five deeds of parts of the tract given within twenty-five years, including the three deeds to the plaintiff; which five deeds were introduced in evidence by the plaintiff.

The road in question is one of public convenience and necessity, and is a public highway created by dedication of their lands to the use of the public for a highway by the owners of the lands through which the road passes, and especially by the owners of the plaintiff's land, and by the acceptance thereof by the public as and for a highway. The court came to this conclusion from the facts herein found, derived from all the evidence in the case, and an inspection of the road at the request of the parties.

In October, 1883, while the defendant was a selectman of the town of Enfield, and had charge of the highways in that part of the town in which this road lies, complaints came to him that the road was impassable from trees and brush.

One Button also came to him with the like information, and wanted to cut out the obstructions. The defendant having inspected the road and found it obstructed as represented, directed Button " to cut the brush and trees and make the road passable at as little expense as possible." Button had cut out the road twice before for the town, and was competent for the work.

Afterwards, in November, 1883, Button, without further instructions and alone, cut out the road for the town. All the cutting which he did was necessary to make the road passable for travel, excepting the cutting of five white birches and a few limbs on the off sides of two pine trees. The birches stood from fourteen to seventeen feet from any part of the road over which travel passed, and leaned away from the road. The two pine trees stood from nine to ten feet away from any part of the traveled road, and neither the birches nor the limbs of the pine trees in any way impeded travel or were likely to do so. The trees cut were valuable only for fuel. Whatever he cut was left on the premises by him for the plaintiff's use. The plaintiff lives in the parish of West Longmeadow, in the state of Massachusetts, about three miles from the place where the cutting was done, and no notice was given to him of the intended cutting.

This cutting of the birches and pine limbs was clearly unnecessary to make the road passable or convenient, and was not authorized by the defendant.

The plaintiff's damage by the whole cutting, if the same was unlawful, was $10. His damage by the unnecessary cutting was merely nominal.

On the trial the plaintiff claimed as matter of law :—

1. That in this state a highway could not exist by prescription, and that in case of uninclosed and uncultivated land like the plaintiff's, dedication by the owners for a highway could not be found from mere user of the road by the public.

2. That if the road was a highway, yet the defendant was responsible for the unnecessary cutting by Button.

3. That the failure to give the plaintiff notice made the cutting illegal.

The court overruled these claims and on the facts rendered judgment for the defendant. The plaintiff appealed.

*J. W. Johnson* and *A. F. Eggleston*, for the appellant.

1. It is not legally deducible from the facts, that this wood road is a highway by dedication, and the court below erred in holding that it is. Dedication must originate in the voluntary donation of the owner of the soil, and the intention of the owner to dedicate must be clear, manifest, and unequivocal. *Riley* v. *Hammel*, 38 Conn., 576. It is conceded that there was no grant or other direct act of the owners of the soil, in this case, dedicating this road to public use. The public, to be sure, had used the road and the owners knew it. The selectmen of Enfield had twice, in recent years, cut some brush and overhanging branches; although it does not appear that the owners knew of such cutting. And there is no doubt that it was convenient to go across from the King to the Allen road by means of this path. But the substantial fact from which the dedication of this road to public use is to be inferred, if inferred at all, is the bare public user with the knowledge and without objection of the owners of the land; and the inquiry is, the land being uncultivated and uninclosed woodland, whether bare user for the time and in the manner appearing in the record, is sufficient to constitute the road a public highway. Dedication is not to be presumed so readily of land of this character and situated as this land is, as of property in cities and villages. This road evidently started in the owners themselves using it to draw off timber and wood from their lands, and after they had once made a track, the way through the woods being a little shorter than through the established highways, travelers began to take this wood road. They did no harm, and there was no good reason why the owners of the land should attempt to prohibit their crossing. No road-bed was constructed, no repairs were made on the road, and nothing was done by the public or by the town show-

ing that the public made any claim to use it as a highway. The cutting of a few brush and overhanging branches of trees on a wood road possesses no significance.   The plaintiff lives three miles away, and the brush and overhanging branches of trees might be cut many times and he not have his attention called to it, and if he did, he might not think or care anything about it.   Angell, in his work on Highways, § 151, well states the law on the presumption of dedication of a road to the public, by mere user, over uninclosed woodlands.   He says:  "It has been decided that dedication of a road to the public over the waste and uninclosed lands of an individual ought not to be inferred from bare user alone.   Thus, where a road that had been in existence for more than fifty years had originally passed entirely through woodland, the jury were instructed that mere user by the public, however uninterrupted and long-continued, would be insufficient to constitute it a public road; but must be accompanied by acts which showed the use to have been claimed as a right, and not by permission of the owner; such as working on it, keeping it in repair, and requiring the removal of obstructions.   To prohibit such use would be considered churlish, and would be ineffectual unless constant watch were kept; and therefore, to subject him to the presumption of dedication from such use, would be to exclude his property from the protection of the law."   And in the states where tracts of uncultivated and uninclosed lands exist, the courts have declared the law to be as here stated. *Hutto* v. *Tindall*, 6 Rich. (S. C.), 396; *Fox* v. *Virgin*, 5 Bradwell, 515; *Peyton* v. *Shaw*, 15 id., 192; *Hewins* v. *Smith*, 11 Met., 241.   In *Kyle* v. *Town of Logan*, 87 Ill., 64, the court say: "It is neither the temper, disposition, fashion, nor habit of the people, or custom of the country, to object to the community crossing unimproved lands, until owners wish to inclose."   See also *Com.* v. *Fiske*, 8 Met., 245.   Does it not in fact appear from the finding that there was no intention of the land owners to dedicate this road to public use?   It appears, affirmatively, that some years ago a land owner dug a ditch across this road at its eastern terminus,

and a land owner plowed up a portion of the road at its western terminus and sowed buckwheat. They could hardly do more to manifest a want of intention to dedicate the road to public use. Besides, they have never recognized the existence of this road in any deed, but have conveyed these lands without mention of any road. If such acts on the part of the land owners do not show an intention not to dedicate this road to public use, it will hardly be claimed that they show a clear, manifest and unequivocal intention to dedicate to public use.

2. Assuming however that the road is a highway by dedication, it must have a location and must exist within certain lines, and neither the town nor its agents possessed the legal right to cut down trees on the plaintiff's land outside those lines. The trial court makes two divisions of the cutting complained of. In the first it places that which it finds to have been necessary to make the road passable, and in the second that which it finds to have been *unnecessary*. And the court holds, as a matter of law, that the defendant is not liable for either kind of cutting; because what was necessary to make the road passable the defendant as selectman had the legal right to do, and what was *unnecessary* he did not do or authorize Button to do, and was not liable for Button's act. But the court has not found whether the cutting was done within or without the limits of the highway. And it is not to be inferred from the finding that it was done within its limits ; because the court was requested not only to find the width of the pretended road, but also to find whether the necessary cutting was done within or without its limits, and the court refused both requests. The court assumes that whenever growing trees, whether within or without the limits of the highway, interfere with public travel, the town or its agents have the legal power to cut them down without notice to the land owner. This certainly is not law. Towns do not have authority in this summary manner to subject to a public easement land not lying within the lines of the highway. " The boughs that overhang the traveled path of a highway are a nuisance and may be

cut off by those having the repair of highways in charge, but the trees cannot be cut nor can branches thereof be cut lest they should at a future time operate as an obstruction." Wood's Law of Nuisances, 277 ; *Owens* v. *Crossett,* 105 Ill., 360 ; *Beardsley* v. *City of Hartford,* 50 Conn., 529. But trees themselves are not a nuisance when growing on private land, outside the limits of the highway. The pine trees, which the court finds to have been fifteen or twenty inches in diameter, were probably of forty or fifty years' growth. Other trees smaller in dimensions were cut down. In fact there were in all one hundred and seventy-five trees cut down. Does it make no difference in law whether these trees stood upon the plaintiff's land outside or inside the limits of the highway, as to the legal right of the defendant, as selectman, to cut them down, and especially when no notice was given to the plaintiff of such intended cutting?

3. The court erred in holding that the defendant is not liable for what the court terms *unnecessary* cutting. There can be no doubt, upon the facts, that the town is not liable. *Judge* v. *City of Meriden,* 38 Conn., 90 ; *Walcott* v. *Swampscott,* 1 Allen, 101. And if the defendant is not liable therefor, the plaintiff must look solely to Button, an irresponsible person, and the plaintiff is practically without remedy for the injury. There can be no question that if the defendant did such unnecessary cutting himself or authorized it to be done, he would be liable. *Tearney* v. *Smith,* 86 Ill., 391 ; *Elder* v. *Bemis,* 2 Met., 599 ; *Wetherell* v. *Newington,* 54 Conn., 73 ; *Adams* v. *Richardson,* 43 N. Hamp., 212. The act done was directly invasive of the private rights of the plaintiff. The discretion which protects an officer of the town in the repair of a highway, stops at the boundary where the absolute rights of property begin. *McCord* v. *High,* 24 Iowa, 336. It being conceded that the defendant himself did not do this unnecessary cutting, were his authority and relations to Button such that the doctrine of *respondeat superior* applies? The defendant told Button " to cut the brush and trees, and make the road passable." Was it not equivalent to directing Button to cut such brush and trees

as, in his judgment, should be necessary to make the road passable ? Did not the defendant commit to Button a dis cretion in the matter ? Button did not act willfully, with a view to further his own interest or to satisfy any private or personal feeling; but he acted honestly and within the scope of his employment and duties as he understood them. And if there was no express authority given to him to do this unnecessary cutting, yet if the relation of master and servant existed between them, the defendant is clearly liable. Wood's Master & Servant, 544, 585; *Smith* v. *Webster*, 23 Mich., 298; *Luttrell* v. *Hazen*, 3 Sneed, 20; *Elder* v. *Bemis*, 2 Met., 599; *Howe* v. *Newmarch*, 12 Allen, 49; *Cohen* v. *Dry Dock &c. R. R. Co.*, 69 N. York, 170. Public officers are not acting for the public when committing trespasses upon private property. *Wetherell* v. *Newington*, 54 Conn., 73. " With regard to the responsibility of a public officer for the misconduct or negligence of those employed by or under him, the distinction apparently turns upon the question whether the persons employed are his servants appointed voluntarily and privately, and paid by him, and responsible to him, or whether they are his official subordinates, nominated perhaps by him, but officers of the government; in other words, whether the situation of the inferior is a public office or a private service. In the former case the official superior is not liable for the inferior's acts; in the latter he is." 1 Am. Lead. Cases, 651; Dunlap's Paley on Agency, 300; Wharton on Negligence, § 288; *Saw-yer* v. *Corse*, 17 Gratt., 230; *Elder* v. *Bemis*, 2 Met., 599; *Shepherd* v. *Lincoln*, 7 Wend., 250; *Nicholson* v. *Mounsey*, 15 East, 384.

4. If the trees stood within the highway and interfered with public travel, the defendant had no right to cut them down without first giving notice to the plaintiff to remove them, and the failure so to do made the cutting illegal, and the court erred in holding to the contrary. *Clark* v. *Dasso*, 34 Mich., 86; *Bills* v. *Belknap*, 36 Iowa, 583.

*C. H. Briscoe* and *J. Hamlin*, for the appellee.

1. The existence of a highway may in this state be shown by prescription. *Beardslee* v. *French*, 7 Conn., 127; *Sherwood* v. *Weston*, 18 id., 51; *Noyes* v. *Ward*, 19 id., 269; *Brownell* v. *Palmer*, 22 id., 118, 121. And the same in other states. 2 Greenl. Ev., § 662; *Com.* v. *Low*, 3 Pick., 412; *Odiorne* v. *Wade*, 5 id., 421; *Reed* v. *Northfield*, 13 id., 97; *Stedman* v. *Southbridge*, 17 id., 162; *Williams* v. *Cummington*, 18 id., 313; *Valentine* v. *Boston*, 22 id., 79; *Hicks* v. *Fish*, 4 Mason, 310; *Com.* v. *Cole*, 26 Penn. St., 187; *Chicago* v. *Wright*, 69 Ill., 318; *State* v. *Green*, 41 Iowa, 693; *State* v. *Wells*, 70 Misso., 635; *McWhorter* v. *The State*, 43 Tex., 666.

2. In the case of uninclosed and uncultivated land a dedication for a highway can be found from mere use by the public. Angell on Highways, §§ 132, 142, 143; 3 Kent Com., 451; *Curtiss* v. *Hoyt*, 19 Conn., 169; *Noyes* v. *Ward*, id., 267; *State* v. *Taff*, 37 id., 397, 400; *Cincinnati* v. *White's Lessee*, 6 Pet., 512; *Barclay* v. *Howell's Lessee*, id., 512; *Morgan* v. *Railroad Co.*, 96 U. S. R., 716; *Valentine* v. *Boston*, 22 Pick., 81; *Jennings* v. *Tisbury*, 5 Gray, 73; *Hayden* v. *Stone*, 112 Mass., 346; *Denning* v. *Roome*, 6 Wend., 657; *Hunter* v. *Trustees of Sandy Hill*, 6 Hill, 413; *Suspension Bridge Co.* v. *Bachman*, 66 N. York, 261; *Fairfield* v. *Morey*, 44 Verm., 239; *Mayor &c. of Jersey City* v. *Morris Canal Co.*, 12 N. Jer., Eq., 547; *McCormick* v. *Mayor &c. of Baltimore*, 45 Maryl., 512; *State* v. *Welpton*, 34 Iowa, 144; *Green* v. *Bethea*, 30 Geo., 896; *Mayor &c. of Madison* v. *Booth*, 53 id., 609; *Downer* v. *St. Paul & Chicago R. R. Co.*, 23 Minn., 271; *Pierpoint* v. *Harrisville*, 9 W. Virg., 215; *Mansur* v. *The State*, 60 Ind., 357; *Mansur* v. *Haughey*, id., 364; *Portland* v. *Whittle*, 3 Or., 126.

3. The *locus in quo* being a public highway, it was the duty of the town to remove the trees and brush that incommoded public travel. Gen. Statutes p. 231, sec. 1; *Hewison* v. *City of New Haven*, 34 Conn., 142; *State* v. *Merritt*, 35 id., 317.

4. The defendant is not liable for the unnecessary cutting of trees by Button. 1 Rev. Swift's Dig., 71; Story on

Agency, §§ 321, 457; *Church* v. *Mansfield*, 20 Conn., 284; *Ogden* v. *Raymond*, 22 id., 383; *Thames Steamboat Co.* v. *Housatonic R. R. Co.*, 24 id., 54; *Crocker* v. *New London &c. R. R. Co.*, id., 265; *Bacheller* v. *Pinkham*, 68 Maine, 255; *White* v. *Phillipston*, 10 Met., 110; *Walcott* v. *Swampscott*, 1 Allen, 102; *Johnson* v. *Dunn*, 134 Mass., 524; *Hutchins* v. *Brackett*, 22 N. Hamp., 252; *Conwell* v. *Voorhees*, 13 Ohio, 523.

5. If the defendant is liable for the acts of Button, yet as the court has found that the damage from his unnecessary acts is merely nominal, a new trial will not be granted. *Hyatt* v. *Wood*, 3 Johns., 239; *Shipman* v. *Horton*, 17 Conn., 481, 487; *Gold* v. *Ives*, 29 id., 123; *Cooke* v. *Barr*, 39 id., 306; *Briggs* v. *Morse*, 42 id., 260; *Raymond* v. *Clark*, 46 id., 135.

6. It was not necessary that the court should have found the exact limits of the highway. It found that the highway as used was obstructed, and use determines the width of a highway that is established by use. The presumption in the case of land dedicated for a highway, is that enough is dedicated to answer the ordinary requirements of public travel. *Hannum* v. *Belchertown*, 19 Pick., 311; *Hull* v. *Richmond*, 2 Wood. & Minot, 337.

LOOMIS, J. The acts constituting the trespass complained of were committed by one Button, by order of the defendant as a selectman of the town of Enfield, and consisted of the cutting of certain trees and brush which obstructed and hindered the passage of travelers along an alleged highway of the town.

There was no dispute as to the acts done, the official character of the defendant, nor the ownership of the land. The chief contention centered around the question whether or not the *locus in quo* was a highway. This we will first consider, and then notice briefly some subordinate questions that were made in the case.

It was conceded that if a highway existed, it had become established by dedication alone. The conclusion of the

trial court was as follows :—" The road in question is one of public convenience and necessity, and is a public highway created by dedication of the lands through which the road passes, and especially by the owners of the plaintiff's land, and by the acceptance thereof by the public as a highway." This is so full and complete as to preclude further contention on this point unless some error in law intervened to vitiate the result and produce a mistrial. No such error appears, unless the claim of the plaintiff on the trial is correct as matter of law, " that in this state a highway could not exist by prescription, and that in case of uninclosed and uncultivated land like the plaintiff's, dedication by the owners for a highway could not be found from mere use of the road by the public."

The first part of the proposition as to the effect of prescription, or long-continued public use, is directly in the face of the uniform tenor of the authorities in this state and elsewhere. In the language of HINMAN, J., in delivering the opinion of the court in *Sherwood* v. *Weston*, 18 Conn., 51, "it has long been settled that the existence of a highway may be proved by immemorial usage, or by dedication of the road to the public use, as well as by the record of the original lay-out." *Beardslee* v. *French*, 7 Conn., 128; *Brownell* v. *Palmer*, 22 id., 118; *Curtis* v. *Hoyt*, 19 id., 169; *Noyes* v. *Ward*, id., 269; *State* v. *Taff*, 37 id., 397; *Guthrie* v. *New Haven*, 31 id., 321; *Commonwealth* v. *Low*, 3 Pick., 412; *Reed* v. *Northfield*, 13 id., 97; *Stedman* v. *Southbridge*, 17 id., 163; *State* v. *Green*, 41 Iowa, 693; *Chicago* v. *Wright*, 69 Ill., 318; *State* v. *Cole*, 26 Penn. St., 187.

The other part of the plaintiff's claim is, that "in case of uninclosed and uncultivated land a dedication cannot be found from mere use of the road by the public." In answer to this claim we say :—

First, that the court based its conclusion not only upon a continuous use by the public as far back as living witnesses could remember, coupled "with the knowledge and assent of the adjoining land owners and especially with the knowledge and acquiescence of the owners of the plaintiff's land,"

but also upon the facts that the town authorities had distinctly recognized the road as a public highway, and had as early as 1867, and again in 1880, removed the obstacles to public travel in precisely the same manner as in the case at bar. It is not true therefore that the dedication rested on mere user. This answer would be sufficient without controverting the legal proposition upon which the plaintiff relies.

But, secondly, we doubt whether the proposition is sound that as matter of law it is impossible to find a highway by dedication from long-continued public use and acquiescence in such use where the land over which the way is claimed is uninclosed and uncultivated.

We concede that the plaintiff cites some high authorities in support of his claim. Angell on Highways, § 151; *Hutto* v. *Tindall*, 6 Rich. (S. C.), 396; *Peyton* v. *Shaw*, 15 Bradwell, 192; *Kyle* v. *Logan*, 87 Ill., 64.

*Hutto* v. *Tindall* seems to be the leading case on this subject. The text from the paragraph cited from Angell on Highways, in behalf of the plaintiff, was taken from the opinion of the court in that case, but the principle of that case it seems to us is better stated in the head note as follows: —"Where the mere use of a road by the public through uninclosed woodland is relied upon to establish a right of way in the public, it must be shown that the use was continued for twenty years and was adverse." FROST, J., in delivering the opinion, explained what was meant by adverse use, namely, "such acts as showed that the way was claimed as a right, and not used by the permission of the owner of the land over which it passed." No fault can be found with such a statement of the law, but in applying the principle to the facts of that case, a mere evidential fact, namely, that the land was uninclosed woodland, was given a conclusive effect to show that the use was not adverse and that there was no intention to dedicate the way to the public. In a few states where there are large tracts of uninclosed and uncultivated lands, the law has been applied in the same manner for the protection of land owners, and it has also been applied to the uncultivated lands held by the United

States Government where a way has been used as a highway over them for more than twenty years. In *Phipps* v. *The State*, 7 Blackf., 512, the court said:—" We do not think this doctrine of dedication from user is at all applicable to the extensive, uncultivated domain of the United States. This domain is not in the actual, visible possession of any- body. There is no one to watch and guard against encroach- ment. It is impossible that the general government should know whether its unseated lands are improperly used for high- ways or not. There cannot therefore exist that consent by the owner to the use of his land for a road, from which dedi- cation can be presumed." The principle invoked in behalf of the plaintiff is here recognized as exceptional, that where the owner is so situated with reference to his land that he cannot know how it is being used, his assent is not to be presumed from such use.

It is obvious that the doctrine under discussion is not as a rule of law as well adapted to a state like our own, where the land, as a rule, is cut up into small farms, and where tracts of uncultivated and uninclosed lands are comparatively few in number and small in extent. As a matter of evidence however it is unquestionably true, and applicable here as elsewhere, that the fact that the land over which a way by dedication is claimed is uninclosed woodland, ought greatly to weaken, and often to overcome, the presumption of an intention to dedicate, to be derived from the use.

It may be that the trial court did not give this fact the weight it ought to have had, but, if so, this court is power- less to revise any error in the weighing of evidence. In this respect the position of this court is unlike that of the highest courts of some other jurisdictions, where the finding of the court below does not preclude additional and some- times contrary inferences of fact in the court above. We find little or no disparity in the authorities upon the prop- osition that it is a question of fact for the jury to decide on the evidence in each particular case, whether the facts show an intention to dedicate the *locus in quo* to public use. A

question of intention must necessarily be a pure question of fact.

But it may be suggested that, as the fact that land is uninclosed and uncultivated is conceded to be very strong evidence to rebut the presumption of an intention to dedicate it, there can be no harm done by making it conclusive. We think it more logical and in better accord with the analogies of the law, and on the whole more just, if the fact is used merely as evidence. Its weight depends on the character and amount and duration of the use and the purpose which the way used subserves in promoting public convenience ; all which being known to the land owner may signify to him a use so unmistakably adverse that his assent must be presumed in the absence of any dissent. But were the principle made an absolute rule of law no such discriminations could be made ; it would apply equally to a small and casual, and to a large and constant use ; to a neighborhood crossing and to a great public thoroughfare ; to a small uncultivated tract and to a large one. And how would the doctrine be applied if we suppose the way used to pass first over cultivated land and then over a small tract of uninclosed and uncultivated land of a different owner, the whole however serving some great purpose of public convenience and necessity ? Would the first part of the way become by dedication a mere *cul de sac*, or would the use of the whole go for nought because a part was over uncultivated and uninclosed land ? Such are only a few of the difficulties attending the application of the principle as a rule of law.

The character, extent and manifest purpose of the use might as well be made conclusive as the character of the land used. Both must be considered in connection with all the circumstances, to arrive at a just conclusion upon the question whether there has been a concession of the way by the owner of the soil. In this case the fact of dedication, having been found upon proper and appropriate evidence, has been conclusively established.

If then the locus was a highway and the trees obstructed

the travel over it, it was both the right and the duty of the defendant to remove the obstructions.

But it is said that, as a prerequisite to the exercise of such right and duty, notice to the plaintiff was necessary before the cutting. We cannot accept such a proposition. Public rights were interfered with; public travel was actually obstructed; the town was exposed to liability for damages done to the traveler. Why then require the selectman to go three miles to notify the land owner before he could take away the hindrance to travel. Delay, presumably, would have injured the public without conferring any benefit on the owner of the land. It is found that the wood was all left on the premises, which the owner had the benefit of, without the expense of cutting it himself.

It is well settled that a nuisance which actually obstructs public travel may be abated by any one who is injuriously affected. The defendant surely cannot be in any worse position because it was his official duty to remove the obstructions to prevent any such injury.

The plaintiff, in his reasons of appeal, also complains because the court omitted to find any definite limits of the highway and to determine whether the cutting of the trees was within these limits or not. No question as to the limits of the highway was made in the court below, and the case did not depend upon it. The question was whether the trees actually obstructed public travel. It was so found; and this of necessity involved the finding that they projected within the limits of the traveled path, and no one would claim that a highway established by user could be of less extent.

But another claim of law remains to be considered— whether the defendant was liable for the unnecessary cutting by Button.

The defendant directed Button "to cut the brush and trees and make the road passable at as little expense as possible." The court finds that "all the cutting which Button did was necessary to make the road passable for travel, excepting the cutting of five white birches and a few limbs on

the off-sides of two pine trees. The birches stood from fourteen to seventeen feet from any part of the road over which travel passed, and leaned away from the road. The two pine trees stood from nine to ten feet away from any part of the traveled road, and neither the birches nor the limbs of the pine trees in any way impeded travel or were likely to do so." The court further finds that "the plaintiff's damage by the whole cutting, if the same was unlawful, was $10. His damage by the unnecessary cutting was merely nominal."

The defendant invokes for his protection the rule that a public officer or agent is responsible only for his own misfeasance or negligence, and not for the negligence of his subaltern, provided the latter is competent for the work. Story on Agency, § 321; Wharton on Agency, § 550.

Although the general language in which the rule is stated in the books may at first seem decisive of this question, yet we think it is not applicable to this case. In stating the proposition that the principal is not liable, a qualification stated in Story on Agency, (*supra*,) should always be understood—that is, that he is not liable unless he directed or authorized the wrong. Then there is another very important distinction, to the effect that if the inferior or sub-agent holds not an office known to the law, but his appointment is private and discretionary with the officer, the principal is responsible for his acts. This distinction is more fully stated in a note to the case of *Wilson* v. *Peverly*, in 1 American Leading Cases, 5th edition, side p. 651, top p. 785.

In *Shepherd* v. *Lincoln*, 17 Wend., 250, it was held, COWEN, J., delivering the opinion, that a superintendent of repairs on the canals of the state is personally liable in an action on the case for damages sustained by an individual through the negligence of workmen employed in making repairs.

In the case at bar, upon the finding, we do not think Button should be regarded as an inferior public officer or agent, but rather as acting solely under the defendant, so that the question we are considering turns on the authority

given by the defendant to Button.   There was of course no express authority as the court finds to do unnecessary cutting, but there was express authority "to cut the brush and trees and make the road passable."   No trees were pointed out, no limits given, no restriction of any kind was mentioned, no indication was given as to the defendant's own judgment, but the work was all committed to the judgment and discretion of Button as to what should be cut.   There is no claim or suggestion that Button acted maliciously or wantonly, but he acted on his own judgment, just as in effect he was told to do, and so we say he acted within the scope and course of his employment, so that his act was the defendant's act.   The case is therefore clearly within the principle of law as given in Wood's Law of Master and Servant, § 288:—" When a person puts another in his place to do certain acts in his absence, he necessarily leaves him to determine for himself according to his judgment and discretion, according to circumstances and exigencies that may arise, when and how the act is to be done, and trusts him for its proper execution; consequently he is answerable for the wrongful execution of the act either in the manner or occasion of doing it, provided it is done *bonâ fide* in the prosecution of his business, and within the scope of the servant's express or implied authority, and not from mere caprice or wantonness and wholly outside the duties imposed upon him by the master."   See the cases cited in note 3 of this section; also the case of *Smith* v. *Webster*, 23 Mich., 298.

We conclude that there was error in holding the defendant not liable for the unnecessary cutting, which would give the plaintiff a new trial if the court had not found that the damage from the unnecessary cutting was merely nominal.   The mere fact however that only nominal damages can be given would not be conclusive on this question. Regard must be had to the real purpose and object of the suit.   If it was instituted to try some question of permanent right, and the party is found entitled to that right, but it happens that only nominal damages can be given,

there can be no objection on that account to giving a new trial; but if the party has failed in the substantial object of the suit, and has left only a bare technical right to recover nominal damages, a new trial will not be awarded him for that purpose.

The complaint in this suit was manifestly brought to determine whether the plaintiff had a right to the land which was in use for a highway; if error had intervened tending to defeat him in the establishment of this right the finding that his damages were merely nominal would have constituted no objection to a new trial; but the plaintiff entirely failed in the real object of the suit, but, by reason of the accidental cutting of some brush and trees not necessary to make the highway passable, he has a bare technical right to nominal damages. But substantial justice has been done. Had he asked compensation for the unnecessary cutting merely, the defendant presumably would have paid him even more than nominal damages, for he had no object except to vindicate the right of the public to use the way.

That a new trial must be denied under these circumstances is abundantly sustained by the uniform tenor of the decision, in this state and elsewhere. *Shipman* v. *Horton,* 17 Conn., 487; *Gold* v. *Ives,* 29 id., 123; *Cook* v. *Barr,* 39 id., 306; *Briggs* v. *Morse,* 42 id., 260; *Hyatt* v. *Wood,* 3 Johns., 239; *Hudspeth* v. *Allen,* 26 Ind., 165; *Plumleigh* v. *Dawson,* 1 Gilman (Ill.), 544.

There was no error in the judgment complained of.

In this opinion the other judges concurred.