FRANK N. LOOMIS ET AL. *vs.* THE CONNECTICUT RAILWAY AND LIGHTING COMPANY.

THE CONNECTICUT RAILWAY AND LIGHTING COMPANY *vs.* ROSA MORGANSTERN ET AL.

Third Judicial District, Bridgeport, April Term, 1905.

TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

The opening of a way for the use of a landowner and his customers does not constitute a dedication of the land to public use, even though the way be used by the public for other purposes.

Whether the use of a way by the public is under a license, or as of right, may be a question of law when all the facts are found; but it is usually, as in the present case, one of fact depending largely upon the actual or manifested intent of the person opening the way, the use made of it and the control exercised over it by him, as well as upon the purpose, character and duration of the use made of it by the public.

While a railroad company may have the power to dedicate land held by it in fee for a highway, yet, in the absence of fraud or misleading conduct, an intention to dedicate will not be inferred from the mere fact that the company allows the public to make use of land about its passenger station in a manner consistent with the public use for which the company acquired it.

The meaning of a resolution of a municipal board cannot be determined by the aid of the discussion which took place at the time of its passage.

Argued April 11th—decided July 14th, 1905.

ACTION by property-owners to restrain the construction of a street railway, and action by the street-railway company to restrain the property-owners from interfering with the construction of the railway, brought to the Superior Court in New Haven County and tried together to the court, *Shumway J.;* judgment for the railway company in each case, and appeal by two of the property-owners. *No error.*

*Verrenice Munger*, for the appellants.

*Edward A. Harriman*, for the appellees.

HALL, J. · On the 15th of October, 1902, the Connecticut Railway and Lighting Company, acting under § 3823 of the General Statutes, presented to the board of aldermen of the city of Derby a written application for the approval of a plan of construction of its street railway through Derby Avenue, Gilbert Street, and New Haven Avenue, in the city of Derby, accompanied by a map showing the proposed location of the tracks, which, after due notice and hearing, was on the 14th of November, 1902, approved, with the following modifications: " Except that from a point commencing at the junction of Commerce Street with Derby Avenue, and continuing toward Derby through New Haven Avenue, Gilbert Street, and Derby Avenue to a point opposite the southwest corner of land of Dr. Frank N. Loomis, said tracks shall be laid in the center of said respective highways, and except that said layout from the southwest corner of land of Dr. Frank N. Loomis, northerly along Derby Avenue, to the intersection of the proposed tracks with the present tracks, is granted and approved along the easterly side of said avenue, as shown in said map, until such time as Derby Avenue . . . shall be defined, when said tracks shall be located along the westerly side of said highway."

The map accompanying the application, changed to conform to said order, was filed with the city clerk, and no change of the location, as shown thereon, has since been ordered.

Rosa Morganstern, a party plaintiff in the first suit and one of the defendants in the second, on the 4th of September, 1903, acquired title by deed from the previous owner —the person named in said order of the board of aldermen, Frank N. Loomis—to premises used for tenements and stores, the building upon which, called the Loomis building, fronts westerly on Derby Avenue, formerly Front Street —which at this place runs in a northerly and southerly direction and along which said street railway has been constructed—and southerly on an open triangular space lying easterly of Derby Avenue and between said building

of Rosa Morganstern and the building known as the Mansion House, owned by Robert H. Griffin, one of the defendants in the second case.

At the time of the commencement of these actions (the first complaint being dated July 26th and the second July 27th, 1903) Rosa Morganstern was in possession of the said Loomis building and premises, under an agreement by Loomis to convey them to her.

The Mansion House faces westerly on the triangular space above described, and southerly on Gilbert Street, along which the street railway has been laid, and was purchased by the defendant Griffin in December, 1900, from one Treat, the receiver of the Mansion House Company.

The New Haven and Derby Railroad Company has since 1870 been the owner of property on the west side of Derby Avenue and west of the Morganstern property and the Mansion House, and the northeastern boundary of the property of said New Haven and Derby Railroad was shown on the map presented by the street-railway company to the board of aldermen with its said application.

In the early summer of 1903 and before the commencement of these actions, said Morganstern erected an iron railing or fence along her claimed southern boundary line, and from the west end of said line, which was about twenty-nine feet from the southwest corner of the Loomis building, extended said railing northerly to the southwest corner of the verandah of the Loomis house. In laying its tracks the street-railway company removed a portion of said railing.

The defendant Griffin has threatened to remove the tracks of the railway company, and has cut down two of its trolley poles.

The first action is to restrain the street-railway company from maintaining its tracks as they have been located and laid at this place, and to recover damages, and the second is to restrain said persons from interfering with the construction and operation of the railway as so located. The two cases were tried together in the Superior Court and the two appeals argued together in this court.

Loomis since the commencement of these suits, having conveyed to Mrs. Morganstern his interest in said Loomis premises, has been dropped as a party in both actions. As it appeared that Mrs. Morganstern did not intend to interfere with the construction and operation of the railway, the injunction in the second suit was against the defendant Griffin only.

The street-railway company's layout at this place is a temporary one, and its tracks are to be moved to the westerly side of Derby Avenue as soon as the city of Derby acquires the land of the New Haven and Derby Railroad Company for highway purposes, for which the city of Derby is negotiating.

The accompanying sketch represents a portion of the map presented by the street-railway company to the board of aldermen with said application, with the changed location of the tracks in accordance with the modifications ordered by the board of aldermen.

The principal claims made by Morganstern and Griffin upon the trial of these cases in the Superior Court were: first, that the railway company had located and laid its tracks outside of the limits of the highways and upon the private property of each of them; and second, that if the railway company's tracks were located and laid within the limits of said highways, they were not placed in the middle of the same as required by the vote and order of the board of aldermen of November 14th, 1902.

Regarding the first of these claims, the trial court held that the railway company "constructed its railway in said streets"; that the railing erected by Morganstern, and removed by the railway company, was "situated in the highway, as herein found to exist"; and that "Griffin has no title to any of the property on which the railway company's tracks are laid, or over which its cars are to be operated, or upon which its poles have been or are to be erected."

As sustaining these conclusions the trial court has found: first, that the entire space southwest of a straight line drawn

from "the southwest corner of Griffin's building, known as the Mansion House, to the southeast corner of the verandah of Mrs. Morganstern's building (Loomis building), has been used by the public as a public highway for more than twenty

years, has been dedicated to such use by the owners of the property, and the public has accepted the same as a highway; and it has been kept in repair by the town and city of Derby during said time"; second, "that most of the additional triangular space between Griffin's and Morgan-

stern's buildings and said highway was dedicated to public use as a part of the same highway in 1895, . . . by an agreement between the street commissioner of the city of Derby, on the one hand, and Manson S. Burgess, the former owner of the Morganstern property, and Emory B. Hotchkiss, who at that time was secretary and general manager of the Mansion House Company, the former owner of the Griffin property, and who purported to act on behalf of said company, on the other "; and third, that the property described in the deed from the receiver Treat to Griffin " does not extend further west than the west line of the steps of the Mansion House, as shown on the maps, nor further south than the north line of Gilbert Street, as shown on the maps."

If these conclusions were properly reached by the trial court, said first claim of the appellants necessarily failed, even if the iron railing removed by the railway company correctly marked the south, and a part of the west, boundary of the Morganstern property as described in the deeds of Burgess to Loomis in 1899, and Loomis to Morganstern in 1903.

The appellants contend that the question of dedication was one of law, and that upon the facts found the trial court should have held that the public used the space and way described only under a license from the owners, and that the facts did not prove a dedication of the land to a public use, because the owners had the right to throw open the land for their own use and convenience in the conduct of their business carried on at the Mansion House, and in the stores of the Loomis building, and for the use and convenience of their patrons and customers in such business, and because the land so thrown open was in fact so used by the owners and their patrons and customers, although the public were also allowed to pass over it.

The opening of a passageway over one's own land as a convenient means of access for himself and his customers to his store or hotel does not amount to a dedication to a public use of the land so thrown open, although such passway

may also be used by the public generally. Such use by the public can only properly be held to be under an implied license. *Irwin* v. *Dixion*, 9 How. (U. S.) 10; *Commonwealth* v. *Petitcler*, 110 Mass. 62; *Morse* v. *Ranno*, 32 Vt. 600. But the fact that a way which is used by the public is also used as an approach to the place of business of the owner of the land over which it passes, although usually a very important circumstance in determining whether the use by the public is under an implied license or under a dedication and acceptance of the way as a highway, is not necessarily decisive of that question. Whether such use of a way by the public is under a license, or as of right, may become a question of law when all the facts affecting it have been found; but it is usually, and it was in this case, a question of fact depending largely upon the actual or manifested intention of the persons opening the way, as to whether it was thrown open for the use of the public or for the benefit of the owners of the land, upon the purpose, character and duration of the use made of it by the public, and upon the use made of it and the control exercised over it by such owners. *Williams* v. *New York & N. H. R. Co.*, 39 Conn. 509, 519; *Hartford* v. *New York & N. E. R. Co.*, 59 id. 250, 254; *Kent* v. *Pratt*, 73 id. 573, 578, 579.

The statement which the railway company claimed to have proved to have been made by the owners of the triangular open tract between the Loomis building and the Mansion House, to the street commissioner of Derby, that "this (referring to said open space) is open to the public, and always will be open. This never will be closed, and the city ought to be willing for the rights and privileges they have here to macadamize the whole of this," might properly have been considered by the trial court as quite inconsistent with the appellants' claim that the owners of this land did not intend to throw it open for the use of the public, but only for their own use and that of their customers.

As to the finding of the court of a dedication and acceptance, as a public highway, of the land lying southwesterly of a line between the southwest corners of the two

buildings, we cannot say from the record that the trial court failed to recognize and apply the correct rule of law as to the proof required to establish a highway by dedication.

That the west boundary lines of the land described in the deed from Treat to Griffin do not extend further west or south than the court has found, seems to be shown by the language of the deed and the evidence before us. We cannot, therefore, say that the trial court erred in reaching the conclusions above stated upon the facts found, and upon the evidence before it (passing for the present the claimed errors in rulings upon evidence), nor can we, upon an examination of the evidence certified to this court, sustain the appellants' claim that any of these facts were found without evidence to support them, or contrary to the evidence admitted upon the trial.

Under the second claim—that the street-railway company had failed to place its tracks in the middle of the highway in compliance with the vote of the board of aldermen—the appellants contended that instead of laying them, as the railway company did, so that the easterly track was but about seven feet west of the southwest corner of the Loomis building, they should have been laid in the middle of the open macadamized roadway, some thirty feet wide at this point, and which had for more than fifteen years been used by the public as a highway and had been macadamized by the city of Derby; that so much of the west side of said roadway as had been the property of the New Haven and Derby Railroad Company had become, by dedication and acceptance, a part of the public highway; and that it was the intention of the board of aldermen, in adopting the resolution referred to, that the tracks should be laid in the middle of this roadway.

With respect to this claim the trial court has found that the location of the tracks upon the map filed with the city clerk conformed to the vote of the board of aldermen; and that the company " constructed its railway in said streets in accordance with the lay out granted to the railway com-

pany, by said board of aldermen"; and has held that although the public have been permitted to use the land forming the westerly side of Gilbert or Front Street and belonging to the New Haven and Derby Railroad Company "for the purposes of approach to the railroad station, and for the purpose of travel from Gilbert Street to Front Street and New Haven Avenue," for a period of more than fifteen years, and the city of Derby had macadamized this with the other part of roadway, there has been no dedication by the railroad company of any portion of its said property as a public highway.

In so ruling upon the facts found, and in so finding upon the evidence before us, the Superior Court committed no error. While it may be within the power of a railroad company to dedicate to the public as a highway land held by it in fee (*Green* v. *Canaan*, 29 Conn. 157, 166), such an intention, in the absence of fraud or conduct which misleads others, will never be inferred from facts like those in the present case, showing a use by the public necessary to, or consistent with, the very public use for which the railroad company holds the property claimed to have been dedicated. *Williams* v. *New York & N. H. R. Co.*, 39 Conn. 509; *Chicago* v. *Chicago, R. I. & P. Ry. Co.*, 152 Ill. 561.

As the westerly part of the open way at the southwest corner of the Loomis building, which was the property of the New Haven and Derby Railroad Company, formed no part of the public highway, there remained but a very narrow highway upon which the street railway could be located, the roadway of the public highway proper at this point being less than ten feet in width, and the tracks of the street railway were therefore apparently necessarily so laid that the easterly rail was but seven feet from the southwesterly corner of the Loomis building. By the language of the order of the municipal authorities, the tracks running through Gilbert Street, and northerly along Derby Avenue, were to be in the middle of the highways up to this point, and north of this point were to be on the east side of Derby

Avenue. But this language can only properly be interpreted as requiring the change, from the middle to the east side of the street, to be made by practicable curves, and the testimony of the engineers, as witnesses for the street-railway company, is that the tracks are laid in accordance with the map filed. The facts and evidence before us are not such as required the Superior Court to find either that the board of aldermen intended, by the language of the order modifying the proposed layout, to direct the tracks to be laid upon the land of the railroad company, or that they were ignorant of the narrowness of the highway at this point, or of the location of the east boundary line of the railroad company's property, which was one of the lines of the map presented and explained to them, as well as of the altered map on file, the location of the tracks as they appear upon which has not since been ordered changed.

The objections to the several questions asked of the street-railway company's witness Hill, as to whether the tracks could have been laid in a different course, upon the ground that if they could not have been laid as directed a change of location should have been applied for, were properly overruled. The answers were not that the tracks could not have been laid as ordered, but in effect that they were laid in accordance with the resolution of the board of aldermen, as properly interpreted.

The question asked upon cross-examination of the same witness, whether there was any discussion, at any meeting of the board of aldermen, as to the location of the street lines, was rightly excluded. A statement at such discussion as to the intended location of the tracks could not affect the meaning of the language of the resolution adopted, or the location of the tracks as shown by the map on file referred to in the resolution, in the absence of any subsequent modifying order of the board.

The evidence of the agreement of Hotchkiss, in behalf of the Mansion House Company, as its secretary and general manager, of a dedication, in 1895, of the triangular space between the Mansion House and Loomis building, became

admissible upon proof of the fact found, that the stockholders and company knew of such agreement and dedication.   But this evidence, like the declaration of the receiver Treat at the time of the sale of the Mansion House property, received against appellants' objection, that the triangular space had been opened to the public, became immaterial and its admission harmless, in view of the fact that neither the tracks, nor any part of the cars of the railway company when running upon the tracks, are east of the east line of the highway, as it is found to exist, that is, east of a straight line between the southwest corner of the Mansion House and Loomis building, and in view of the location of Griffin's west boundary as described in his deed from Treat.

There was no error in admitting the testimony of the mayor of Derby of his conversations with the engineers of the New York & New Haven Railroad Company respecting the widening of the highway at the point in question.   This evidence was apparently offered, not for the purpose of proving the terms of the written agreement of layout, which had been acted upon, nor as affecting the title to property, but as showing that negotiations were pending, which would probably be successful, for such widening of the street and change of the location of the tracks of the street railway.

To the claim of Mrs. Morganstern, that in the first action she should have been awarded damages even though the tracks are laid, and the railroad operated, entirely within the limits of the highway, it is sufficient to say that the court has not found that her property was damaged by such location of the tracks.

One of the reasons of appeal is that the trial court overruled the appellants' claim that, under the denials in the answer in the first case, the railroad company could not justify its acts under the vote of the board of aldermen.   We do not find in the record that any such claim was made in the lower court.   Under the arrangement by which the two cases were tried together, the court was justified in treating, as apparently both the court and counsel did during the trial, the question clearly raised by the pleadings in the sec-

ond case—whether the railway company had laid its tracks and was operating its road within the limits of the highway and in accordance with the vote of the board of aldermen— as equally applicable and material to the first.

There is no error.

In this opinion the other judges concurred.