EMMA LACHAPPELLE, ADMINISTRATRIX (ESTATE OF
WILFRED J. LACHAPPELLE) *vs.* THE BOROUGH OF
JEWETT CITY.

LEONTINE MASSE, ADMINISTRATRIX (ESTATE OF LOUIS
J. MASSE) *vs.* THE BOROUGH OF JEWETT CITY.

MALTBIE, C. J., HINMAN, BANKS, AVERY and BROWN, JS.

Argued April 14th—decided May 14th, 1936.

*Arthur T. Keefe,* with whom, on the brief, were *Harry E. Back* and *Joseph P. Smith,* for the appellants (plaintiffs).

*John T. Barry,* with whom was *Richard J. Dudkowski,* for the appellee (defendant).

BANKS, J.  The plaintiffs' intestates were drowned by reason of an automobile, in which they were riding on Water Street in the borough of Jewett City, becoming stalled and rolling backward into Slater Mill Pond. The action is based upon the alleged failure of the defendant to maintain a sufficient railing on the side of the road under the provisions of § 1419 of the General Statutes, giving to one suffering damage by reason of the want of such railing a right of action against the party bound to maintain the road.  The complaint alleged that Water Street was a public road which the defendant was bound to keep in repair.  This the defendant denied.  The only question upon this appeal is whether this was a public road created by dedication and acceptance by the public, as claimed by the plaintiffs, or whether, as held by the trial court, there had never been such dedication and acceptance as to constitute it a public road.

The following facts relevant to this issue appear from the finding: Water Street, so-called, is a strip of land which, prior to 1896, extended easterly from Slater Avenue.  Except near Slater Avenue and where it widened out at the easterly end, it was between forty and fifty feet wide.  It was owned, together with other land fronting on Slater Avenue, by the Slater Mills from 1824 to 1925, when it was sold to the Fisk Rubber Company, and by the latter company to the Fisk Realty Company in 1933.  Some years prior to 1891, the Slaters had caused houses to be built along the northerly side of the strip for the use of their employees, and left the way open for their convenience in going to and from work.  In 1891 there were three of these tenement houses, two sheds and a barn on the north side of the strip.  None of these were in existence at the time of the accident.  In 1896 the then owner of the Slater Mills conveyed to the Twelfth

School District of the town of Griswold a parcel of land at the east end of Water Street, "together with a right of way from the herein conveyed premises to Slater Avenue through Water Street, so-called." The conveyance was upon condition that the premises be used for school purposes only with a right of reverter and re-entry upon breach of the condition. In 1903 the then owner of the premises conveyed to the defendant a strip of land at the easterly end of the way, together with a right of way "over the remaining land of the releasor and Water Street, so-called, from said strip . . . to Slater Avenue." Upon this property the defendant erected an electric power plant. It built a substantial fence from the corner of this building across the traveled portion of the way, which remained in position from about 1906 until 1909 or 1910. After the defendant acquired this property School Street was opened up east of the power station substantially in the same location as a lane which had previously existed.

During the course of time a traveled way was made upon Water Street. Whatever repairs were done on this were done by the Slater Mills putting on cinders from their engine house, except that some street cleanings were dumped by the defendant's employees in front of the power plant and, at the request of the owner, in front of a blacksmith shop which was located on the north side of Water Street. At the westerly entrance to Water Street there was a sign "Water Street" which was put up by an employee of the defendant, but there was none on the other end of the street. For several years, up to within two or three years of the accident, there had been "private way" signs at each end of the street. Prior to 1896 Water Street was used almost entirely by employees of the Slaters in going to and from their work, by persons

visiting them and by trades people delivering goods to them. After 1896 it was used for the same purposes as long as the tenement houses remained and by the school children and people going to and from the blacksmith shop. It was seldom used for any other purpose, but was used from time to time by persons as a short cut going to church or fishing and for pleasure. Upon these subordinate facts the trial court found that the owners of Water Street never by any act or deed dedicated it as and for a highway, that the unorganized public had not accepted it as such, and that it was not a public highway. These findings are conclusive unless they are legally or logically inconsistent with the subordinate facts found, or involve the application of some erroneous rule of law material to the case. *Davis* v. *Margolis*, 107 Conn. 417, 422, 140 Atl. 823.

The plaintiffs contend that the conveyance by the owners of a parcel of land at the end of this strip to the School District for school purposes and of another parcel, upon which the power house was built, to the Borough, with, in each case, a right of way through the strip to Slater Avenue, constituted an express dedication of Water Street as a public highway. We are unable to agree with this contention. The deeds conveyed, in each case, a right of way appurtenant to the parcel of land conveyed. This fell far short of a conveyance of land for the use of the general public as a highway. Nor do the deeds manifest an intention on the part of the grantor to dedicate the land to public use as a highway. On the contrary these conveyances, granting a mere right of way appurtenant to the parcels of land conveyed, would tend to negative an intent on the part of the grantor to dedicate either the land conveyed or that over which the right of way was given to the general public as a public highway.

The court did not err in finding that there was no express dedication of Water Street as a public highway.

The acts and conduct of an owner of land may be such that the law will imply from them an intent to devote it to the public use, and the plaintiff contends that such is the situation here. An implied dedication which arises by operation of law from the conduct of the owner of the property, rests upon the broad common-law doctrine of equitable estoppel. *Guthrie* v. *New Haven,* 31 Conn. 308, 321. It proceeds upon the principle "that the owner, after having permitted the public to use his land for the purpose for which it is claimed to have been dedicated, under such circumstances that the public accommodation and private rights, supposed to be acquired in consequence of such permission, might be injuriously affected, by an interruption of such enjoyment, is held to be precluded from denying that the public have acquired a right to such use in whatever manner, on the ground that such denial would be, on his part, a violation of good faith." *Noyes* v. *Ward,* 19 Conn. 250, 267. There must in all cases be an intention on the part of the owner to dedicate his land. This may be implied from his acts and conduct, but they must be such that his intention is clearly manifest. *Kent* v. *Pratt,* 73 Conn. 573, 578, 579, 48 Atl. 418. "No presumption of an intent to dedicate arises unless it is clearly shown by the owner's acts and declarations, or by a line of conduct the only reasonable explanation of which is that a dedication was intended." 4 McQuillin, Municipal Corporations (2d Ed.) § 1694.

Our inquiry, then, is whether the conduct of the owners of this land, as it appears from the finding, was such as to require the conclusion as a matter of law that they intended to dedicate it as and for a public highway. As already noted, the inclusion, in the con-

veyances, to the School District and the Borough, of a right of way in each case through Water Street tend to negative the existence of such intention. This is also true of the repairs to the street done by the owners and of the existence of the "private way" signs at each end of the way while they remained there which was up to within two or three years of the accident. The plaintiffs rely upon the user of the way by the general public as proof of the intention of the owners to dedicate it as a public highway. Such user, known to and acquiesced in by the owner, may, under certain circumstances, afford a sufficient ground for an inference as an intention to dedicate. *Ely* v. *Parsons*, 55 Conn. 83, 10 Atl. 499; 4 McQuillin, Municipal Corporations (2d Ed.) § 1688. In order to establish a highway by dedication there must exist not only a dedication by the owner but an acceptance by the public. Such acceptance is usually established by proof of the actual use of the way by the unorganized public. In the cases chiefly relied on by the plaintiffs, the question involved was whether or not the use of land which had been dedicated by the owner was such as to show an acceptance by the public. Without a dedication there can of course be no acceptance. Conceivably a use by the public of land claimed to have been dedicated as a highway which would be sufficient to establish its acceptance of the dedication might not necessarily be inconsistent with the absence of an intention by the owner to dedicate it to the public. *Davis* v. *Bonaparte*, 137 Iowa, 196, 202, 114 N. W. 896; 8 R. C. L. 903, § 28.

This way was left open by the Slaters for the use and convenience of their employees in going to and from their work and for access to the houses built for them. That it was also used by the public does not conclusively establish its dedication to public use. *Loomis* v. *Connecticut Ry. & Lighting Co.*, 78 Conn.

156, 161, 61 Atl. 539; 4 McQuillin, Municipal Corporations (2d Ed.) § 1689. After the tenement houses in which these employees lived were removed, the finding is that the way was used by school children and people going to the blacksmith shop, but seldom for any other purpose, except from time to time by persons taking a short cut going to church or fishing or for pleasure. Whether the facts found show an intention to dedicate the locus in quo to the public use is ordinarily a question of fact for the trier. *Ely* v. *Parsons,* 55 Conn. 83, 97, 10 Atl. 499; *Dougan* v. *Greenwich,* 77 Conn. 444, 448, 59 Atl. 505. Here the facts found as to the use of the way, and the acts and conduct of the owners with regard to it, are not such as to require an inference as a matter of law of an intention to dedicate it to public use as a highway. Whether or not an inference of intention to dedicate should be drawn from these facts was a question of fact for the trial court and it has found that there was no such dedication. With this conclusion we cannot interfere.

There is no error.

In this opinion the other judges concurred.