## ALICE C. MIHALCZO *v.* BOROUGH OF WOODMONT ET AL.

COTTER, C. J., LOISELLE, BOGDANSKI, LONGO and RUBINOW, Js.

Argued May 3—decision released August 1, 1978

*Gerald T. Weiner,* for the appellants (defendants).

*Clement J. Kichuk,* for the appellee (plaintiff).

COTTER, C. J. The plaintiff, the owner of a shorefront cottage at Merwin's Point in the borough of Woodmont, city of Milford, brought this action seeking a permanent injunction restraining the defendants from interfering with the use and enjoyment of her property, a determination of the rights in and to her land, and damages. From a judgment in favor of the plaintiff, the defendants have appealed.

The following facts were found by the court: The plaintiff's property, known as No. 2 Chapel Street, was purchased by warranty deed in 1970, and is bounded southerly fifty feet by Long Island Sound and westerly by Chapel Street, formerly known as Beach Avenue. These premises were conveyed to her together with and subject to the agreements and rights-of-way contained in a document which involved other cottagers and other parcels of land fronting on Long Island Sound, and which was executed by John W. Merwin and others, dated May 22, 1885, and recorded in the Milford land records. The right-of-way to pass and repass on foot only was granted by Merwin to those cottagers, their heirs and assigns and the heirs and assigns of each of them. Along with the aforesaid documents a map delineating the rights-of-way was recorded, also describing a lot referred to as parcel N, designated "Proposed Road," which is now Dixon Street.

A seawall-walkway in general conformity to the beach and shore now exists across the width of the Mihalczo property adjacent to the beach on the south. Although the cement seawall-walkway has been in existence for about fifty years and used by the unorganized public, including some residents of the defendant borough, as a walkway, the plaintiff first became aware of the use of the seawall-walkway by pedestrians when she moved into the cottage in the summer following her purchase of the property in February, 1970. In June, 1971, after consulting her attorney, she attempted, on three occasions, to erect a gate, open only to the cottagers, across the walkway on the westerly border of her property next to Chapel Street. Under the direction of the warden and burgesses of the borough, however, the defendant constable, George Ramadon, was instructed to remove the gate across the sidewalk, which he did on June 21-22, 1971. Thereafter, the plaintiff brought the present action.

On appeal, we consider only those assignments of error which the defendants have raised in their brief,[1] viz: whether the seawall-walkway was within the plaintiff's property lines; whether she sustained her burden of proof that it "was within her southerly boundary without establishing the mean high-water mark of Long Island Sound"; whether the defendant borough in order to claim an easement must have a deed to a road appurtenant to the land that it claims was dedicated and accepted as a public right-of-way; whether the defendant borough established a prescriptive right-of-way by adverse use under General Statutes § 47-37; and, finally, whether

---

[1] *Lynch* v. *West Hartford*, 167 Conn. 67, 73, 355 A.2d 42.

the seawall-walkway was dedicated to the Wood-
mont Association-Borough by the plaintiff's prede-
cessors in title.[2]

The findings that the plaintiff has title to the
property which is bounded southerly fifty feet by
Long Island Sound are not attacked. The latter
description is equivalent to a boundary at the high-
water mark since the land between high and low-
water marks remains in the state. *Short Beach Cot-
tage Owners Improvement Assn.* v. *Stratford,* 154
Conn. 194, 200, 224 A.2d 532. Thus, Long Island
Sound establishes the southern boundary of the
plaintiff's property. *Buckley* v. *Maxson,* 120 Conn.
511, 518–19, 181 A. 922; *Smith* v. *Dotolo,* 99 Conn.
241, 242, 121 A. 472. It has been recognized that a
landowner could have a fee simple title only to the
area above the *mean high-water mark.* *Shorefront
Park Improvement Assn., Inc.* v. *King,* 157 Conn.
249, 251, 257, 253 A.2d 29. The court properly
concluded, and the defendants agree, that the loca-
tion of the mean high-water mark delineates the
plaintiff's southern boundary.

In using the term "high-water mark" the line of
mean high water mark or "ordinary high-water mark
is always intended." *United States* v. *Pacheco,* 69
U.S. (2 Wall.) 587, 590, 17 L. Ed. 865; *Freeman*
v. *Bellegarde,* 108 Cal. 179, 41 P. 289. "[B]y the
common law, the shore 'is confined to the flux and
reflux of the sea at ordinary tides.' *Blundell* v.

---

[2] The five questions stated above were the main issues raised in the
trial court by the parties, and the defendants in their arguments
and brief have limited their appeal to those issues. The case will be
discussed and disposed of on that basis. Maltbie, Conn. App. Proc.
§ 42; *Maher* v. *Town Planning & Zoning Commission,* 154 Conn. 420,
423, 226 A.2d 397; *Staff* v. *Hawkins,* 135 Conn. 316, 317, 64 A.2d 176.

*Cotterall,* 5 B. & A. 268, 292. It is the land 'between ordinary high and low-water mark, the land over which the daily tides ebb and flow. When, therefore, the sea, or a bay, is named as a boundary, the line of ordinary high-water mark is always intended where the common law prevails.' *United States* v. *Pacheco* . . . [supra]." *Borax Consolidated Ltd.* v. *Los Angeles,* 296 U.S. 10, 22, 56 S. Ct. 23, 80 L. Ed. 9.

The defendants separately by way of special defense allege that the sidewalk in issue was "across the southern portion of the plaintiff's property," and the defendant borough in its cross complaint alleges that the strip of land which it claims is either a public sidewalk or a public right-of-way which the borough residents obtained by prescription is "across the southerly portion of the plaintiff's property." The quoted portions of the defendants' allegations which admit that their claims specifically relate to pedestrian passage over the southerly boundary of the plaintiff's land are judicial admissions and are conclusive upon the defendants. *Bridgeport* v. *Stratford,* 142 Conn. 634, 646, 116 A.2d 508.

The court found that a survey of the shoreline by the state water resources commission for the years 1964 to 1967, inclusive, which was admitted into evidence as a full exhibit by the defendants, showed a constant shifting of the mean high-water mark on shore, and, as a result of this movement, the plaintiff's beach today shows approximately the same conditions that prevailed before the pumping of sand about sixteen years ago. That exhibit and the testimony presented at the time of its introduction support the findings and conclusion of the court that

although the seawall is periodically touched by high tide, the mean high-water mark or the plaintiff's southerly boundary is presently about twenty feet southerly from the plaintiff's seawall-walkway. The court made a visual inspection of the plaintiff's premises and of the physical appearance and structure of the seawall and walk between Chapel and Clinton Streets, in company of counsel for the parties; it observed the tide and sand along the southern boundary of the plaintiff's property.

The court, therefore, was not in error in concluding that the seawall-walkway was within the plaintiff's property line.

The named defendant's claim that it has the same right to use the walkway as any other property owner fronting on the beach who received a grant from Merwin is similarly without merit. It is undisputed that the intervening deeds in the plaintiff's chain of title all carry the restrictions and benefits of the easement agreement of 1885 between the so-called "Cottagers" concerning the correlative right to pass and repass on foot over the right-of-way in question, without expressing at any time any further easement in favor of the public, the borough of Woodmont, or its predecessor, Woodmont Association. The fact that Dixon Street, which was originally shown as a "Proposed Road" on the 1885 map, is now a public street which ends at the seawall-walkway and stairway leading from the seawall to the beach, does not, as the defendant claims, entitle it to "inherit" the easement of way specifically granted for the benefit of the "Cottagers" who were described in and parties to the agreement.

Nor have the defendants satisfied their burden of proving the acquisition of an easement by prescription. We have held that the unorganized public cannot acquire rights by prescription. Since a deed or devise to the unorganized public by that name would be void for uncertainty, there can be no prescription where there can be no grant. *Turner* v. *Hebron,* 61 Conn. 175, 187, 22 A. 951; 4 Tiffany, Real Property (3d Ed.) § 1193. The burden of proving adverse use was upon the borough of Woodmont; it was thus required to establish that its use of the plaintiff's property was open and visible, continuous and uninterrupted for fifteen years, and under a claim of right. General Statutes § 47-37. As to the last mentioned element alone, the court specifically found that "there was no expression of a claim to a public right-of-way over the plaintiff's property prior to that inferentially made on June 17, 1970." This finding and others must stand since they find reasonable support in the evidence or in reasonable inferences drawn from the facts proven. *Dunn* v. *Santino,* 139 Conn. 352, 355, 93 A.2d 726. We cannot say as a matter of law that the court was required to find that the claim of an easement by prescription was affirmatively proven. *Loewenberg* v. *Wallace,* 147 Conn. 689, 699, 166 A.2d 150.

The defendant borough further argues that there was an implied dedication to the public by the plaintiff and her predecessors in title of a right-of-way over the seawall-walkway; it claims that the Woodmont public used the walkway with the acquiescence of the property owners for a long period of time and that the borough maintained and repaired the seawall on several occasions without complaint from the property owners.

When the original wall of boulders and the present seawall and walkway were erected, or who constructed them, is not known, and no records pertaining to the actual construction of any seawall have been shown. The trial court found, however, that at different times repairs to the seawall and walkway were made by the owners of the respective properties, although from the time of the 1938 hurricane until the commencement of this action in 1971, necessary repairs were demanded of the property owners by the borough or its predecessor. In June, 1970, the borough warden, citing action taken at the meeting of the board of the warden and burgesses, sent a letter to all property owners along the wall in issue demanding that they "make the necessary repairs to the sidewalk in front of their houses" within one week; otherwise, the borough would have the work done at private expense.

Whether a parcel of land has been dedicated to a public use by the owner of the fee and accepted for such use by and in behalf of the public are questions of fact for the trier. *Whippoorwill Crest Co.* v. *Stratford,* 145 Conn. 268, 271, 141 A.2d 241. An implied dedication which may arise by operation of law from the acts and conduct of a property owner must be such that his intention is clearly manifest to devote land to the public use; " '[n]o presumption of an intent to dedicate arises unless it is clearly shown by the owner's acts and declarations, or by a line of conduct the only reasonable explanation of which is that a dedication was intended.' 4 McQuillan, Municipal Corporations (2d Ed.) § 1694." *LaChappelle* v. *Jewett City,* 121 Conn. 381, 386, 185 A. 175. The way was used by the cottagers by virtue of recorded deeds, agreements and documents over the years and repairs were made by them. Acquies-

cence of the property owners to its use by some members of the public does not conclusively establish its dedication to the borough for public use. *Loomis* v. *Connecticut Ry. & Lighting Co.,* 78 Conn. 156, 161, 61 A. 539. " '[M]ere permission on the part of the owner to the public to use the land as a way, without more, will not constitute an intention to dedicate, since a temporary right to use a private way is in the nature of a mere license, revocable at pleasure, and does not in any sense establish the requisite intent. Accordingly, mere permissive use of land as a street or the like, where the user is consistent with the assertion of ownership by the alleged dedicator, does not of itself constitute a dedication nor demonstrate a dedicatory intention.' 11 McQuillan, [Municipal Corporations (3d Ed. Rev. 1964) § 33.32, pp. 710–11.]" *Lynch* v. *West Hartford,* 167 Conn. 67, 78, 355 A.2d 42. Without a dedication there can, of course, be no acceptance.

The facts found as to the use of the seawall-walkway, and acts and conduct of the landowners with regard to it, are not such as to require an inference as a matter of law of an intention to dedicate it as a public right-of-way. We cannot interfere with the conclusion of the trial court that there was no such dedication.

One additional matter requires brief discussion. The judgment in this case went beyond the judgment that should be rendered in an action to quiet title. The judgment decrees in part that "the plaintiff is the owner in fee of the land described in her complaint, and that the defendants have no rights therein for the use of the seawall and walk across the plaintiff's property as a walkway or public sidewalk by easement or dedication." Since only the plaintiff

and the defendants were made parties to the issues in controversy, the rights of any other parties cannot be authoritatively determined. We confine our consideration to the rights of the plaintiff and the defendant borough of Woodmont in the property. *Dennen* v. *Searle,* 149 Conn. 126, 130, 176 A.2d 561; see *Connecticut Light & Power Co.* v. *Southbury,* 95 Conn. 242, 247, 111 A. 363 (in its capacity as a municipal corporation, a town "does not represent the property rights of its inhabitants, and has no authority to assert them or put them in jeopardy in this action"). The proper judgment adjudicating the rights of the parties to this action should be that the court finds the issues for the plaintiff on the complaint and that "the title to said premises be and the same hereby is quieted and settled in said plaintiff as against the defendants, and none of said defendants has any estate, interest in or encumbrance on said property or any part thereof." Practice Book, 1963, Form 512.

There is error in the form of the judgment, it is set aside and the court is directed to render judgment as on file except as corrected to accord with this opinion.

In this opinion the other judges concurred.