******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************************

DONALD PIMENTAL ET AL. *v.* RIVER JUNCTION
ESTATES, LLC, ET AL.
(AC 42644)

Prescott, Moll and Harper, Js.

*Syllabus*

The plaintiffs, D, M, J and G, who owned properties in Thompson that
abutted property of the defendant R Co., sought, inter alia, to quiet title
to a disputed portion of a road, which separated the property of J and
G from R Co.'s property and which R Co. claimed was a public highway.
Following a trial to the court, the trial court found in favor of the
plaintiffs and the defendant town of Thompson on the quiet title claim.
On appeal, R Co. claimed that the court erred in failing to find a mani-
fested intent by the owner of the fee to dedicate the disputed portion
of the road to public use. *Held* that the trial court did not err in determin-
ing that there had been no implied dedication of the disputed portion
as a public road: the court determined that the historical references
on which R Co. relied, including the disputed portion's appearance in
historical maps and its reference as a boundary in various deeds, did
not compel the conclusion that an unidentified owner of the land under
the road manifested an intent to dedicate the road for public use, and
the court was not required to presume dedication as a matter of law,
as evidence of prolonged use as a public highway was lacking; moreover,
R Co.'s argument that the disputed portion was necessarily a public
road because R Co.'s property otherwise would remain a landlocked
parcel was without merit, as the determination of an easement by neces-
sity would have required a distinct analysis from whether particular
land had been dedicated to public use.

Argued March 3, 2020—officially released September 14, 2021

*Procedural History*

Action, inter alia, seeking to quiet title to certain real
property, and for other relief, brought to the Superior
Court in the judicial district of Windham, where the
court, *Calmar, J.*, granted the plaintiffs' motion to bifur-
cate; thereafter, the matter was tried to the court, *Hon.
Leeland J. Cole-Chu*, judge trial referee; judgment for
the plaintiffs, from which the named defendant
appealed to this court. *Affirmed.*

*Stephen T. Penny*, for the appellant (named defen-
dant).

*Kenneth R. Slater, Jr.*, for the appellees (plaintiffs).

*Mark R. Brouillard*, for the appellees (defendant
town of Thompson et al.).

*Opinion*

MOLL, J. In Connecticut, one method of establishing a public highway is through the common-law theory of dedication and acceptance. See *Montanaro* v. *Aspetuck Land Trust, Inc.*, 137 Conn. App. 1, 10, 48 A.3d 107, cert. denied, 307 Conn. 932, 56 A.3d 715 (2012). This appeal concerns the trial court's determination that the defendant River Junction Estates, LLC (River Junction), failed to prove, pursuant to such theory, that a portion of Starr Road in the town of Thompson (town), i.e., from approximately 0.15 miles beyond Starr Road's intersection with New Road to the Rhode Island state border (disputed portion), is a public highway. River Junction appeals from the judgment of the trial court, rendered following a trial to the court—in favor of the plaintiffs, Donald Pimental, Melissa Pimental, Jayson Livingstone, and Gail Livingstone,[1] as well as the defendant town—on the plaintiffs' claim to quiet title to the disputed portion of the road. River Junction's primary claim on appeal is that the court erred in failing to find a manifested intent by the owner of the fee to dedicate the disputed portion of Starr Road to public use. Because we disagree with River Junction's primary claim, which is dispositive of this appeal, we affirm the judgment of the trial court.[2]

The following facts, as found by the trial court or as are undisputed in the record, and procedural history are relevant to our resolution of this appeal. The parties agree that Starr Road, from its intersection with New Road and travelling thereon for approximately 0.15 miles to the northeast corner of a cul-de-sac, is a public highway. Beyond the cul-de-sac, the road extends to the Rhode Island state border; it is this portion of Starr Road beyond the cul-de-sac that is in dispute.

The Pimentals are the fee simple owners of approximately 7.49 acres of real property located at 40 Starr Road (Pimental property), and the Livingstones own in fee simple approximately ten acres of real property located at 55 Starr Road (Livingstone property). As is relevant to this appeal, River Junction owns in fee simple approximately 15.70 acres of real property (River Junction property) between the Pimental property and the Buck Hill Management Area, the latter of which is owned and managed by the state of Rhode Island. The River Junction property was part of a 112 acre site acquired by River Junction in May, 2004. The Pimental, Livingstone, and River Junction properties are located beyond the cul-de-sac, accessible only by way of the disputed portion of Starr Road, with the River Junction property and the Livingstone property across from one another, separated by the disputed portion. Both the Livingstone property and the River Junction property share their easterly borders with the state of Rhode Island. The Pimental property is located on the northerly side of Starr Road, west of the River Junction prop-

erty.

The defendant Inland Wetlands Commission of the Town of Thompson (commission) is the duly authorized municipal agency empowered to regulate wetlands and watercourses and to enforce the inland wetlands regulations of the town pursuant to the Inland Wetlands and Watercourses Act, set forth in General Statutes § 22a-36 et seq. On September 4, 2015, River Junction submitted a permit application to the commission to conduct a regulated activity by constructing a bridge across a watercourse and wetlands for a driveway to access the River Junction property (wetlands permit application). The drawings associated with the wetlands permit application included permission to divert water from a regulated intermittent watercourse. The commission held three public hearings on the wetlands permit application in January and February, 2016, and thereafter denied that application.

Meanwhile, River Junction had modified the plans to remove the water diversion work and, on November 16, 2015, submitted another permit application to conduct water diversions as public highway improvements (second application) within the disputed portion of Starr Road. Pursuant to § 7.5 of the town's inland wetlands regulations, an application to conduct a regulated activity requires the written consent of the property owner. On the second application, River Junction asserted ownership of the property where the regulated activity was proposed to occur. Town Ordinance No. 10-041 requires the submission of an application to the town's Board of Selectmen (board) for any proposal to conduct work on a public highway within the town. By town ordinance, approval by the board or its designee is required to authorize road improvement work. By letter dated November 16, 2015, Paul A. Lenky, the then first selectman of the town, purported to give River Junction the required consent to submit the second application.

In January and February, 2016, pursuant to General Statutes § 22a-19 (a), the Pimentals and the Livingstones, respectively, filed notices of intervention in which they asserted that the activity described in the application would involve conduct by River Junction that would have, or was reasonably likely to have, the effect of unreasonably polluting, impairing, and/or destroying the public trust in the air, water, or other natural resources of the state. A public hearing on divers dates from February through June, 2016, followed. On July 20, 2016, the commission voted to approve the second application, conditioned on the board's issuance of an approval pursuant to Town Ordinance No. 10-041—approval that required a determination by the commission that Starr Road is a public highway.

Following the conditional approval by the commission, the plaintiffs commenced this action by way of a two count complaint on August 15, 2016. Count one,

which was directed to the commission and River Junction, was brought as an administrative appeal pursuant to General Statutes § 8-8, whereby the plaintiffs sought to have the decision by the commission granting River Junction's second application reversed. In count two, which was directed to the town and River Junction, the plaintiffs sought to quiet title to the disputed portion of Starr Road pursuant to General Statutes § 47-31.[3] The plaintiffs filed a motion to bifurcate adjudication of the two counts—such that the court would try count two first—on the ground that if the court found in favor of the plaintiffs on count two, count one would be rendered moot. The court, *Calmar, J.*, granted that motion by agreement of the parties. Thereafter, on February 14, 2018, the plaintiffs filed an amended, operative complaint (as to count two only), which was submitted in a format directed by the court that indicated which allegations remained in dispute for trial purposes.

In its defense, River Junction maintained that it was entitled to make improvements to the disputed portion of Starr Road and to travel on it as a public highway. In its answer, River Junction asserted two special defenses, both sounding in estoppel, alleging that the town was estopped from denying that Starr Road was a public highway.[4] The first special defense was grounded on allegations that in 1978, incident to the approval of a subdivision, the town had accepted a deed for a 17 foot wide strip of land along the southerly boundary of Starr Road, commencing at its intersection with New Road and extending approximately 1246 feet, resulting in a widening of that portion of Starr Road to 50 feet. According to River Junction, that acceptance constituted an acknowledgement by the town in 1978, that Starr Road was a public road. The second special defense rested on allegations that, in connection with three different lots, the town issued building permits, including to the Pimentals and the Livingstones' predecessor in title, on land located beyond the cul-de-sac. The significance of these issuances was that town zoning regulations required lots to have frontage on a public road in order to be buildable. River Junction alleged that, as a result of the town's foregoing conduct, three of the four properties beyond the cul-de-sac—exclusive of its own—received confirmation that those lots were buildable, having frontage on a public road.

On February 15, 16 and 22, 2018, the plaintiffs' quiet title claim, set forth in count two, was tried to the court. The trial included a site visit by the court with counsel. Following posttrial briefing, on January 11, 2019, the trial court entered an order finding in favor of the plaintiffs and the town, with a memorandum of decision to follow. In a comprehensive memorandum of decision dated February 6, 2019, the court explained that River Junction had failed to prove that the disputed portion was a public highway. Specifically, the court stated that River Junction had failed to establish (1) a manifested

intent by the owner to dedicate the disputed portion for public use, and (2) acceptance by the proper authorities or by the general public. As found by the court, "Starr Road is a town road or public highway only for approximately 0.15 miles from New Road to the northeast edge of the cul-de-sac."[5] This appeal followed.[6] Additional facts will be set forth as necessary.

River Junction claims on appeal that the trial court improperly concluded that it failed to demonstrate a manifest intention by the owner of the fee to dedicate the disputed portion of Starr Road to public use. To put River Junction's claim in its proper context, we note at the outset that, as was made clear by counsel for River Junction at oral argument before this court, its position is that the alleged dedication of Starr Road, including the disputed portion, occurred in the early 1800s. The linchpin of River Junction's argument is that the court rejected or ignored its historical evidence of implied dedication to public use—evidence of a nature previously found probative by our appellate courts—and, rather, focused on the absence of factors indicating a formal dedication.[7] We disagree with River Junction.

We begin with the standard of review and legal principles relevant to this claim. "Our review of the factual findings of the trial court is limited to a determination of whether they are clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Because it is the trial court's function to weigh the evidence and determine credibility, we give great deference to its findings." (Internal quotation marks omitted.) *Benjamin* v. *Norwalk*, 170 Conn. App. 1, 11–12, 153 A.3d 669 (2016). Generally, "[w]hether a parcel of land has been dedicated to a public use by the owner of the fee and accepted for such use by and in behalf of the public are questions of fact for the trier." *Mihalczo* v. *Woodmont*, 175 Conn. 535, 542, 400 A.2d 270 (1978). Whether an implied dedication arises by operation of law, however, is a legal question over which we exercise plenary review. See *A & H Corp.* v. *Bridgeport*, 180 Conn. 435, 440, 430 A.2d 25 (1980) ("[a]bsent such unequivocal conduct [to give rise to an implied dedication], the existence of an intent to dedicate is a question of fact"). Therefore, to the extent that River Junction claims that an implied dedication arose by operation of law on the basis of the historical evidence surrounding Starr Road, we undertake plenary review. In addition, we note that the burden of proof rests upon River Junction, as the party seeking to establish the existence of the disputed portion as a public highway. See *Drabik* v. *East Lyme*, 234 Conn. 390, 397, 662 A.2d 118 (1995).

Our contemporary laws instruct that "[h]ighways are

established by one of the following four methods: (1) through the direct action of the legislature; (2) through authorized proceedings involving an application to a court; (3) through authorized proceedings by agents appointed for that purpose, such as selectmen of towns . . . and specified authorities of cities and boroughs . . . [and] (4) through private dedication of land for that purpose and its acceptance by the public." (Citations omitted; internal quotation marks omitted.) *Montanaro* v. *Aspetuck Land Trust, Inc.*, supra, 137 Conn. App. 9. This appeal involves only the fourth method.

"From early times, under the common law, highways have been established in this state by dedication and acceptance by the public. . . . Dedication is an appropriation of land to some public use, made by the owner of the fee, and accepted for such use by and in behalf of the public. . . . Both the owner's intention to dedicate the way to public use and acceptance by the public must exist, but the intention to dedicate the way to public use may be implied from the acts and conduct of the owner, and public acceptance may be shown by proof of the actual use of the way by the public. . . . Thus, two elements are essential to a valid dedication: (1) a manifested intent by the owner to dedicate the land involved for the use of the public; and (2) an acceptance by the proper authorities or by the general public."[8] (Internal quotation marks omitted.) Id., 11.

"No particular formality is required in order to dedicate a parcel of land to a public use; dedication may be express or implied." (Internal quotation marks omitted.) *Vernon* v. *Goff*, 107 Conn. App. 552, 557, 945 A.2d 1017, cert. denied, 289 Conn. 920, 958 A.2d 154 (2008). "A dedication may be express, as where the intention to dedicate is expressly manifested by an explicit oral or written declaration or deed of the owner, or it may be implied from acts and conduct of the owner of the land from which the law will imply such an intent. An implied dedication, that is, arising by operation of law from the conduct of the owner of the property, rests upon the broad common-law doctrine of equitable estoppel." *Whippoorwill Crest Co.* v. *Stratford*, 145 Conn. 268, 271–72, 141 A.2d 241 (1958). Implied dedication "proceeds upon the principle . . . that the owner, after having permitted the public to use his land for the purpose for which it is claimed to have been dedicated, under such circumstances that the public accommodation and private rights, supposed to be acquired in consequence of such permission, might be injuriously affected by an interruption of such enjoyment, is held to be precluded from denying that the public have acquired a right to such use in whatever manner, on the ground that such denial would be, on his part, a violation of good faith. This doctrine, so far from proceeding on the ground that such enjoyment was adverse and in hostility to the rights of the owner, supposes that it was with his assent. While it is true that an

intent to dedicate must in all cases be clearly shown, to establish a valid dedication, it is not necessary that an actual intention should be found to have existed in the mind of the owner, at the time of the alleged dedication, to appropriate his land to a public use. It is the purpose as manifested by his acts, rather than the intention actually existing in his mind, which the law regards as essential to an implied dedication." (Citation omitted; internal quotation marks omitted.) *Kent* v. *Pratt*, 73 Conn. 573, 578–79, 48 A. 418 (1901).

"An implied dedication may arise by operation of law where the conduct of a property owner unequivocally manifests his intention to devote his property to a public use; but no presumption of an intent to dedicate arises *unless it is clearly shown by the owner's acts and declarations, the only reasonable explanation of which is that a dedication was intended.*" (Emphasis added.) *A & H Corp.* v. *Bridgeport*, supra, 180 Conn. 439–40. "[M]ere permission on the part of the owner to the public to use the land as a way, without more, will not constitute an intention to dedicate, since a temporary right to use a private way is in the nature of a mere license, revocable at pleasure, and does not in any sense establish the requisite intent. Accordingly, mere permissive use of land as a street or the like, where the user is consistent with the assertion of ownership by the alleged dedicator, does not of itself constitute a dedication nor demonstrate a dedicatory intention." (Internal quotation marks omitted.) *Mihalczo* v. *Woodmont*, supra, 175 Conn. 543.

Against this backdrop of legal principles, we set forth the following additional facts found by the trial court relevant to River Junction's claim: Although an old road was labeled as Starr Road on numerous historical maps and was referenced in deeds conveying property bounding upon it, none of the deeds expressed the grantor's intent to dedicate the road for public use. The court stated: "Instead, references to Starr Road in the deeds and maps in evidence show [that] no more of Starr Road is a public road than the 0.15 mile shown on the town road maps, the town road list for state funding, and the Mastronardi-Spirito subdivision plan as 'end of town-maintained road.' Cartographers, be they amateur or professional, presumably map what is on the ground. What is on the ground at [the] time depicted on a map is no more dispositive of the legal status of a road than any other single fact." While finding that Starr Road became convenient as a boundary line, the court was unpersuaded that such evidence demonstrated dedication of the road as a public road, reasoning that "[c]onvenience as a boundary line is far from the 'common convenience and necessity' for travel that is essential to acceptance by the general public. See *Meshberg* v. *Bridgeport City Trust Co.*, [180 Conn. 274, 282, 429 A.2d 865 (1980)]." The court also found that the evidence of an intention to dedicate based on actual

use was not so cogent as to require an inference of dedication.

On the basis of its site visit of the disputed portion, the court explained that it "observed nothing from which dedication of the way as a public road could be inferred, let alone found to be manifest. The deterioration of the road—now in parts a stream bed—is not dispositive; that is to be expected of a very old road, the condition of which is more pertinent to nonuser and abandonment. What was absent in [the court's] view of the site was evidence that Starr Road was ever created to be—i.e., manifestly dedicated as—a public road of useful, let alone convenient and necessary, width and slope." Furthermore, the court stated that it deemed the evidence against Starr Road having been dedicated to be of greater cumulative weight than River Junction's evidence. The court specifically noted (1) certain 1956 and 1958 Connecticut Department of Transportation maps that showed the disputed portion of Starr Road as "abandoned or impassable," (2) aerial photographs from 1934 and 1951 that showed "at most, a vestigial way, consistent with the court's observations on the site walk, through woods to the Rhode Island line—and connecting to no apparent highway or road," and (3) other maps in evidence, one undated and one from 1889, that did not show Starr Road at all. (Internal quotation marks omitted.)

In support of its claim that the trial court erred in failing to find an implied dedication of the disputed portion to public use, River Junction contends that, in contravention of established precedent, the court rejected the probative value of Starr Road's appearance in historical maps and its reference as a boundary in various deeds, as testified to by River Junction's expert witness, Attorney Elton Harvey. We emphasize at this juncture that the court did not reject any evidence of this nature as a matter of law. Rather, the court placed little weight on such evidence.

The cases on which River Junction relies for this claim are *Guthrie* v. *New Haven*, 31 Conn. 308 (1863), in which it was not disputed that the road at issue was a public highway by virtue of dedication and acceptance; id., 309 (preliminary statement of facts and procedural history); and *Mihalczo* v. *Woodmont*, supra, 175 Conn. 535, which similarly lends River Junction no support. In *Mihalczo*, a seawall-walkway was located across the plaintiff's property, which was bounded to the south by Long Island Sound. *Mihalczo* v. *Woodmont*, supra, 536–38. The walkway had existed for approximately fifty years prior to the plaintiff's purchase of the property and was used by the general public. Id., 537. The plaintiff erected a gate across the walkway to restrict the general public's access, and the defendant constable subsequently removed the gate. Id. Following the commencement of the action, the trial court granted

a permanent injunction in favor of the plaintiff to enjoin the defendants from interfering with the plaintiff's right to the property, from which the defendants appealed. Id., 535. On appeal, the defendants claimed, in part, that the plaintiff and her predecessors in title had impliedly dedicated to the general public a right-of-way over the seawall-walkway by virtue of the property owners' acquiescence to its use over a long period of time and the fact that the borough of Woodmont had maintained and repaired the seawall on several occasions without complaint from the owners. Id., 541. Our Supreme Court disagreed, concluding that mere acquiescence by the property owners to the use of the walkway by some members of the public did "not conclusively establish its dedication to the borough for public use." Id., 543. Indeed, the court held that "mere permissive use of land as a street or the like, where the user is consistent with the assertion of ownership by the alleged dedicator, does not of itself constitute a dedication nor demonstrate a dedicatory intention. . . . The facts found as to the use of the seawall-walkway, and acts and conduct of the landowners with regard to it, are not such as to require an inference as a matter of law of an intention to dedicate it as a public right-of-way." (Citations omitted; internal quotation marks omitted.) Id. Simply put, neither *Guthrie* nor *Mihalczo* stands for the proposition that the fact that a named road appears on historical maps or as a descriptive boundary in property deeds is dispositive or entitled to any more weight than any other factual consideration in determining whether an owner has manifested an intent to dedicate property to public use.

Here, the record readily supports, and we leave undisturbed, the court's determination that the numerous historical references on which River Junction relied did not compel "the conclusion that . . . an unidentified owner of the land under Starr Road manifested his or her intent to dedicate the road for public use." The court properly acknowledged that evidence of prolonged use of a road as a public highway may be so cogent that dedication may be presumed. See 11A E. McQuillin, Municipal Corporations (3d Ed. Rev. 2009) § 33:33, p. 549 ("where the public has used the land for a public purpose for a *long time with the knowledge of the owner and without objection from the owner*, an intent to dedicate will generally be *presumed*" (emphasis added)); see also *Kent* v. *Pratt*, supra, 73 Conn. 578–79. The court found, however, and we agree, that such evidence of public use was lacking in the present case.[9] Because the court was left without evidence that clearly shows that the historical owners of the disputed portion unequivocally intended to dedicate it to public use, the court was not required to presume dedication as a matter of law. See *A & H Corp.* v. *Bridgeport*, supra, 180 Conn. 440.

Finally, River Junction contends that the trial court's

finding that Starr Road's appearance in multiple deeds as a boundary or reference point did not demonstrate a manifested intention to dedicate ignores the fact that Starr Road was the only means of access for the plaintiffs, River Junction, and their predecessors in title. River Junction suggests in this regard that it would be "reasonable to conclude that the failure to restrict passage to others was sufficient dedication by the grantors to each grantee." In support of this argument, River Junction relies on *Collins* v. *Prentice*, 15 Conn. 38 (1842), and *Francini* v. *Goodspeed Airport, LLC*, 164 Conn. App. 279, 134 A.3d 1278 (2016), aff'd, 327 Conn. 431, 174 A.3d 779 (2018), neither of which discusses the common-law doctrine of dedication and acceptance of a public highway. Rather, *Collins* involved an alleged private right-of-way by necessity. *Collins* v. *Prentice*, supra, 43. *Francini* involved, as a matter of first impression, whether an easement by necessity may be granted for the purpose of accessing utility services. *Francini* v. *Goodspeed Airport, LLC*, supra, 164 Conn. App. 280. Whether an easement by necessity, which River Junction has not claimed here, should be recognized would require a distinct analysis from whether particular land has been dedicated to public use.[10] In short, River Junction's argument that Starr Road necessarily is a public highway because the River Junction property otherwise would remain a landlocked parcel is without merit.

In sum, on the basis of our comprehensive review of the record, we conclude that "the facts found as to the use of the [disputed portion], and the acts and conduct of the owners with regard to it, are not such as to require an inference as a matter of law of an intention to dedicate it to public use as a highway. Whether or not an inference of intention to dedicate should be drawn from these facts was a question of fact for the trial court and it has found that there was no such dedication. With this conclusion we cannot interfere." *LaChappelle* v. *Jewett City*, 121 Conn. 381, 388, 185 A. 175 (1936).

The judgment is affirmed.

In this opinion the other judges concurred.

[1] In this opinion, we refer to Donald Pimental and Melissa Pimental collectively as the Pimentals, and to Jayson Livingstone and Gail Livingstone collectively as the Livingstones.

[2] River Junction also claims on appeal that the court erred in (1) failing to find acceptance of the disputed portion as a public highway, (2) finding that River Junction, by virtue of a subdivision of certain real property known as Benson Farm, had left itself landlocked, (3) finding that it was not clear that certain properties abutting Starr Road, before their subdivision, had no other access to the public road network other than by Starr Road, and (4) failing to find that the town was estopped from denying Starr Road's status as a public road. In light of our conclusion regarding dedication, we need not address River Junction's remaining claims. See *Mihalczo* v. *Woodmont*, 175 Conn. 535, 543, 400 A.2d 270 (1978) ("[w]ithout a dedication there can, of course, be no acceptance"). With regard to River Junction's estoppel argument directed to the town, we note that, even if River Junction were successful with respect to such claim, such success would not obviate River Junction's burden, vis--vis the plaintiffs, to establish the existence of the disputed portion as a public highway.

[3] General Statutes § 47-31 provides in relevant part: "(a) An action may be brought by any person claiming title to, or any interest in, real or personal property, or both, against any person who may claim to own the property, or any part of it . . . or to have any interest in the property, or any lien or encumbrance on it, adverse to the plaintiff . . . for the purpose of determining such adverse estate, interest or claim, and to clear up all doubts and disputes and to quiet and settle the title to the property. Such action may be brought whether or not the plaintiff is entitled to the immediate or exclusive possession of the property. . . ."

[4] At trial, the town agreed with the plaintiffs that Starr Road, insofar as it extends beyond the cul-de-sac, is not a public road and asserted that, as a result, it had no interest in or liability for the disputed portion. The town maintained this position on appeal.

[5] The court further stated that "[t]he ownership of the roughly thirty-three foot wide bed of the old road known as Starr Road from that point to the entrance of the . . . Livingstones' driveway is not before the court."

[6] Although the court did not expressly dispose of count one (i.e., the plaintiffs' administrative appeal) by dismissing it as moot, we conclude, on the basis of our review of the record, that the court implicitly disposed of count one by virtue of the parties' agreement, endorsed by the court, to bifurcate the adjudication of counts one and two on the ground that if the court found in favor of the plaintiffs on count two (as it did), count one would be rendered moot. See *Meribear Productions, Inc.* v. *Frank*, 328 Conn. 709, 718, 183 A.3d 1164 (2018) ("In assessing whether a judgment disposes of all of the causes of action against a party, this court has recognized that the trial court's failure to *expressly* dispose of all of the counts in the judgment itself will not necessarily render the judgment not final. Rather, the reviewing court looks to the complaint and the memorandum of decision to determine whether the trial court explicitly *or implicitly* disposed of each count." (Emphasis in original.)). Thus, we find no impediment to the exercise of our appellate jurisdiction.

[7] The parties agree that there was no express or formal dedication of Starr Road; the parties disagree as to whether there was an implied dedication of the disputed portion.

[8] "Since 1927, [what is now] General Statutes § 13a-48 has regulated the acceptance of highways by municipalities, or the proper authorities. Public Acts 1927, c. 248." (Footnote omitted.) *Montanaro* v. *Aspetuck Land Trust, Inc.*, supra, 137 Conn. App. 11.

[9] For example, there was some evidence that hikers and hunters would access trails and hunting areas in the Bucks Hill Management Area by way of the disputed portion, as well as evidence of occasional off-road recreational vehicle use. That use, however, even if credited by the trial court, was not of the nature and quality to require an inference of dedicatory intent. We also iterate that permissive use alone does not establish dedicatory intent; see *Mihalczo* v. *Woodmont*, supra, 175 Conn. 543; and such occasional public use was too remote in time to require an inference of dedication in the early 1800s. The same holds true for the evidence of the municipal actions on which River Junction relies, including the town's clearing trees on, and paving of, the first approximately 0.15 miles of Starr Road, as well as the town's issuance of driveway and building permits along the disputed portion, sometime after 1978.

[10] Accord *Francini* v. *Goodspeed Airport, LLC*, 327 Conn. 431, 437, 174 A.3d 779 (2018) ("[i]n the context of easements by necessity for access to a landlocked parcel, this court's precedent directs us to engage in a three-pronged analysis, considering (1) the cost of obtaining enjoyment from, or access to, the property by means of the easement in relation to the cost of other substitutes, (2) the intent of the parties concerning the use of the property at the time of severance, and (3) the beneficial enjoyment the parties can obtain from their respective properties with and without the easement").